**In re SOLAR MFG. CORP.**

Nos. 11052–11054.

United States Court of Appeals
Third Circuit.

Argued June 9, 1953.

Decided Sept. 9, 1953.

Morton Stavis, Newark, N. J., for Morton Stavis (Samuel M. Koenigsberg, New York City, on the brief).

Samuel Marion, pro se.

Milton M. Unger, Newark, N. J., Edward Endelman, Newark, N. J., pro se.

Edward J. O'Mara, Jersey City, N. J., for Bilder, Bilder & Kaufman and O'Mara, Schumann, Davis & Lynch (Nathan Bilder, Albert Freeman, and Frederic W. Schumann, Jersey City, N. J., on the brief).

Samuel M. Coombs, Jr., Jersey City, N. J. (James D. Carpenter, Jersey City, N. J., on the brief), for trustees and pro se.

Harold Harper, New York City, for Harper & Matthews.

Before BIGGS, Chief Judge, and STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

The appellants in these three appeals are attorneys who are disappointed at the fees allowed them by the district court for the part they played in the Chapter X proceedings of the debtor, Solar Manufacturing Corporation.

Appellant Marion is the attorney for one group of debenture holders of the debtor, appellants Unger and Endelman are attorneys for the Cowen Committee, another group of debenture holders, and appellant Stavis is the attorney for the debtor's employee creditors and is also counsel for the bargaining agent of the debtor's employees.

Those who have appeared here as appellees are six in number and are the present and past trustees, present and past counsel for the trustees, and a firm of attorneys engaged as special counsel to prosecute an

action in the Southern District of New York. The Securities and Exchange Commission appears in its advisory capacity under Section 208 of Chapter X.[1]

This proceeding was begun by the filing of a voluntary petition for reorganization in December of 1948. By July of 1949, the proceedings had become very much like a liquidation, the trustees being prepared to sell nearly all of the debtor's assets for $525,000. Upon appeal we set aside confirmation of that sale as being outside the plan protection of Chapter X.[2] Subsequently, bidding was resumed, and an offer of $600,000 was received. Finally, a sale of all of the assets except cash on hand and possible causes of action was accomplished for $815,000. The primary contention of each appellant is that his fee should be increased since it was substantially because of his activities that the material gain in price was realized upon the sale.

Appellant Marion states that the ultimate buyer was unwilling to bid unless debtor's factory at North Bergen, New Jersey, could be disposed of. He claims sole credit for the increment in the sale price because, he argues, he procured a purchaser for this realty, without which the $815,000 sale would not have come about.

Appellants Unger and Endelman claim credit for the increment because, we are told, they secured extensions of time within which to procure bidders; brought in the Reeves proposal which, in turn, smoked out the Sprague bid of $525,000; and enabled the ultimate buyer to secure information as to the debtor's machinery and to be assured of a purchaser of the North Bergen factory, without which the former would not have entered the bidding.

Appellant Stavis asserts that the increase in sale price was largely the result of his efforts since it was his successful appeal which prevented the sale for $525,000, thus making it possible for the estate to secure the higher price.

The determination of the proper amounts to be awarded to fee claimants in reorganization proceedings is within the sound discretion of the district court.[3] Our review, therefore, is confined to a single question of law—abuse of discretion. The factors to be considered in allowing fees are not the same, however, for trustees and their counsel, who are officers of the court, as for attorneys for public creditor groups. The latter's work must be at the expense of their clients unless it is in some manner beneficial to the estate.[4] Each appellant admits that he must show that his services have been beneficial to the estate and argues that he has done so and that the district court abused its discretion by failing to give him credit for his beneficial services.

Our thumbnail sketch of the appellants' positions is sufficient to emphasize the inadequacy of the record before us. There was only one beneficial result, but each appellant claims that his services were the principal cause of that result. That is obviously impossible. No findings having been made by the district court on this question, the factual dispute stands unresolved. For us to resolve it is to distort our function in the hierarchy of the federal courts. We review fee allowances initially determined by the district court; we do not sift disputed factual matters and then make the initial determination ourselves. Discretion to allow compensation is lodged in the district court, not in the court of appeals. Therefore, since we cannot properly exercise our review function until we know which of the appellants, if any, singly or in combination, should receive credit for bringing in the higher price, the matter

1. 52 Stat. 894 (1938), 11 U.S.C.A. § 608.

2. In re Solar Mfg. Corp., 176 F.2d 493 (C.A.3, 1949). Various other phases of this proceeding have also been before us. See 190 F.2d 273 (C.A.3), cert. denied, 342 U.S. 893 (1951), and 200 F.2d 327 (C.A.3, 1952), cert. denied, 345 U.S. 940 (1953).

3. Dickinson Industrial Site, Inc. v. Cowan, 309 U.S. 382 (1940); In re Solar Mfg. Corp., 190 F.2d 273 (C.A.3), cert. denied, 342 U.S. 893 (1951); In re McGann Mfg. Co., 188 F.2d 110 (C.A.3, 1951).

4. 52 Stat. 900 (1938), 11 U.S.C.A. § 643; Dickinson Industrial Site, Inc. v. Cowan, supra, note 3; In re McGann Mfg. Co., supra, note 3.

must go back to be resolved by the fact finder.

Appellants recite beneficial services other than those which we have discussed, and, as to them, there are no conflicting factual claims. Even crediting each with what he claims, however, we cannot review his allowance intelligently without coming back to the unanswered question: Whose services caused the higher sale price?

 Appellant Marion and the Securities and Exchange Commission contend that the allowances as a whole are grossly excessive and that they are arbitrary in that the trustees and their counsel were treated too generously. Of course, the latter present formidable arguments in justification of the amounts they received. We intimate no opinion on that score now but will vacate the entire order because, upon remand, possible changes in the amounts allowed appellants may well affect the over-all fee picture, and the district court should have the entire matter before it so that it may make appropriate adjustments if it should decide that they are necessary.

Some further points are raised by the parties which we need not go into at this time.

The order of the district court will be vacated, and the cause will be remanded for further proceedings not inconsistent with this opinion.