**In re AMERICAN TISSUE MILLS.**

No. 265–53.

United States District Court.
Massachusetts.
March 1, 1954.

See also 120 F.Supp. 953.

Frank L. Kozol, Boston, Mass., for creditors' committee.

Michael J. Donovan, Boston, Mass., for two employees.

Harry M. Ehrlich, Springfield, Mass., for trustee.

Joseph Talamo, Worcester, Mass., for Edward Krock.

Robert B. Kittredge, Boston, Mass., for Charles Bartlett, counsel for petitioning creditors.

WYZANSKI, District Judge.

There are before me nine petitions for compensation and fees filed by the trustee, his counsel, counsel representing for creditors, a secretary of a creditors' committee, and counsel for the debtor.

In considering what are appropriate awards, I have examined the petitions, drawn upon my recollection of this case, examined previous allowances made in this court, and sought to apply general principles of law, applicable to those who seek awards in a corporate reorganization of what proved to be an insolvent company.

I shall deal first with the compensation allowable to the trustee. Since he was assisted by counsel, his claim is based principally on managerial services. He operated on a limited basis the business of the debtor. When he took over the plants were down, and he re-hired about forty employees. With their aid, the company processed and distributed merchandise. The trustee was at the plant nearly daily during seven months of operation, and while there handled such affairs as one would expect to require the attention of an operator preserving the assets of a business running at very low steam. The trustee did the foundation work with respect to the plan of reorganization, personally prepared and submitted it, and secured the necessary assents to it. Problems with respect to claims, including their validity and priority, came before the trustee and received his attention.

The trustee has served since May 26, 1953, and estimates that he has spent, during the first seven months of the corporate reorganization, more than one-half his time in connection with this

estate. The total in hours is said to be 1,142. The trustee's disbursements have amounted to $719.93.

The trust estate which the trustee handled was originally much too generously estimated at about $1,800,000. However, the amount available to secured and preferred creditors has turned out to be $519,758.23, and the amount available to unsecured, general creditors has turned out to be $97,324.90.

The trustee is a man of the highest reputation, personally and professionally. He has an earning capacity at the top of his local bar. The services he performed in this case were of a high order. But he was, of course, undertaking a task for which he had not been retained privately, but to which he was named, in every sense, as an officer of the court. His compensation is fixed by this court at $15,000, and he is allowed expenses in the amount of $719.93.

■ Harry M. Ehrlich, counsel for the trustee has represented to the court that since his appointment in June, 1953, he has performed 417¾ hours service. He has appeared in proceedings in this court, and has with moderate skill presented the legal arguments in connection with certain problems presented to the trustee in administering the estate, and in deciding how far to recognize the validity and priority of claims. This counsel has also advised the trustee about numerous problems in the corporate reorganization, and these needs have varied from the plan itself to ordinary questions arising in the course of business. It has been unnecessary for counsel to carry on extended litigation in any forum.

While Mr. Ehrlich's work was of a standard appropriate for a counsel for a trustee, he was appointed as a court officer, and was engaged in service having an obviously close relation to the court itself. To him this court allows compensation of $5,000.

■ Charles W. Bartlett, counsel for the petitioning creditors, reports that he spent just under 63 hours in preparing a petition for receivership, which ultimately led to the institution of this case. He also had numerous conferences after the petition was filed. His services, while of the highest character, were of principal benefit to the estate only before the appointment of Mr. Robinson as trustee. The court allows him $750, as compensation, and $148.56 on account of disbursements.

■ Nathan B. Fogelson, counsel for the Creditors' Committee, reports that he spent just under 165 hours at various conferences in connection with creditors' problems, and that he attended sessions in the court, where so far as I could observe, he rendered service of minimal value to the estate. The amount of $15,000 which he suggests as appropriate for his fee in a case in which unsecured creditors as a whole receive less than $98,000 in discharge of unsecured debts of over $556,000 speaks more eloquently than I can of what has been his chief interest in this case. To Nathan B. Fogelson I allow $500 as compensation, and $52.97 on account of disbursements.

■ Wasserman, Behr and Shagan, counsel for the Creditors' Committee assert that they spent just under 38 hours. Most of the time was spent at conferences which were of minimal value to the estate. I allow $200 to this firm as compensation, and nothing for disbursements, as none were claimed.

■ Robert J. Walsh, secretary for the Creditors' Committee, petitions on the basis of an asserted expenditure of 470 hours of time. Mr. Walsh's lengthy affidavit shows many activities, but few that in my judgment benefited the estate. It is difficult, despite the circumstantial manner of the affidavit, to see how anything like 470 hours could have been profitably spent for anything but the benefit of the affiant. I allow him $1,000 as compensation, and $775 for disbursements.

■ David Burstein, counsel for the debtor, alleges that he devoted 29 hours to conferences, and to work in connection

with what proved to be an abortive appeal. A close examination of Mr. Bur-stein's memorandum suggests that at least two-thirds of his time was not, and could not have been, of benefit to the estate. I allow him $100 as compensation, and nothing as disbursements.

█ Frank H. Shapiro, counsel for the Creditors' Committee, reports that he has spent just under 148 hours, mostly in conferences, though occasionally on trips to the mill, and appearances in court. From my observation, Mr. Shapiro's services were as valuable as those of any other counselor who appeared for the Creditors' Committee, and reflected a more economical expenditure of time than was true of other counsel, but nonetheless were not of exceptional value to the estate itself. I allow him $1,500 for compensation, and $328.85 for disbursements.

█ Chauncey H. Levy, counsel for the Creditors' Committee, alleges that he spent just under 230 hours in conferences, occasional appearances, and other work for the Creditors' Committee. His participation in time was out of proportion to his effectiveness in benefiting the estate. I allow him $500 as compensation. No disbursements are claimed.

It is possible that the plan of corporate reorganization may have been proposed, assented to, and confirmed under the misapprehension that this court would allow the extravagant original petitions for compensation which (exclusive of disbursement) exceeded $83,000 and approximated the $98,000 allocated to the unsecured creditors. Under the circumstances, it seems to me appropriate that this court should entertain any petitions filed before April 1, 1954 seeking modification of the plan, particularily in the direction of a further distribution to general creditors. If any such petition is filed, notice of it shall be published in the Boston Globe on Monday morning April 5th, and a hearing thereon shall be held at 2:00 p. m. on Thursday, April 8th.