**The OFFICIAL CREDITORS' COMMIT-
TEE OF FOX MARKETS, INC.,**
Appellants,

v.

**Walter ELY and Stuart L. Kadison,**
Appellees.

No. 18923.

United States Court of Appeals
Ninth Circuit.

Oct. 20, 1964.

Rehearing Denied Dec. 15, 1964.

Charles J. Katz, Louis C. Hoyt, Los Angeles, Cal., for appellants.

Paul R. Hutchinson, Los Angeles, Cal., for appellees.

Before MAJOR and McALLISTER, Senior Circuit Judges, and LA BUY, Senior District Judge.*

MAJOR, Senior Circuit Judge.

On June 7, 1963, Walter Ely and Stuart L. Kadison, appellees (claimants), filed in the United States District Court for the Southern District of California, Central Division, an application for the allowance of attorney fees in the amount of $200,000 ($100,000 for each claimant), for services rendered as associate counsel for the trustee in a proceeding for reorganization of Fox Markets, Inc. (debtor), under Chapter X of the Bankruptcy Act (11 U.S.C.A. § 656).

Objections to the claim were interposed by the Official Creditors' Committee of the debtor corporation (appellants). On September 4, 1963, after extended hearings, the Court made its findings and conclusions and entered its order awarding each of the claimants the sum of $85,000 as and for his reasonable attorney fees for services rendered to the Trustee. From this order the Creditors' Committee appeals.

The jurisdiction of this Court is based upon Sec. 250 of the Bankruptcy Act (11 U.S.C.A. § 650), and that of the District Court upon Sec. 241 of the same Act (11 U.S.C.A. § 641). The latter section provides, so far as herein material:

> "The judge may allow * * * reasonable compensation for services rendered * * * in a proceeding under this chapter—* * *
>
> (3) by the trustee and other officers, and the attorneys for any of them * * *."

The ultimate question for decision is whether the allowances made by the District Court were reasonable within the contemplation of the Bankruptcy Act. Claimants argue in support of the award, and the Creditors' Committee to the contrary. In doing so, the latter contends that the fee allowance was grossly excessive, so much so that as a matter of law it constituted an abuse of discretion by the District Court and was clearly erroneous.

Due consideration to the history and purpose of the Bankruptcy Act, a careful study of the voluminous record before us and the many cases called to our attention which have considered and dealt with similar problems lead us to the definite conviction that the allowances were clearly excessive and must be substantially reduced. The importance of the conclusion thus reached suggests a discussion of the situation in some detail.

A brief statement of the proceedings prior to the time claimants were appointed as associate counsel for the Trustee is pertinent. On March 7, 1961, a petition was filed by debtor, then engaged in the operation of a large chain of markets, for leave to file proceedings under Sec. 322, Chapter XI of the Bankruptcy Act (11 U.S.C.A. § 722), which on the same date was allowed by the Court. Throughout this proceeding, Irving Sulmeyer was the duly appointed Receiver in Bankruptcy of the debtor, and the law firm of Buchalter, Nemer, Fields and Savitch was his duly appointed attorneys (hereinafter referred to as the Nemer firm).

The store properties of the debtor at the time of the commencement of the proceedings were some 54 in number, variously located, and all held under lease. The stores most involved in this controversy are known as No. 7 and No. 62. While the aforesaid arrangement proceedings were pending, the lessors of Stores Nos. 7 and 62, respectively, sought termination of their leases and reclamation of the premises. On December 5, 1961, after hearing, the Referee made his order, supported by findings of fact and conclusions of law, terminating the leases as of April 12, 1961, and decreeing that the lessors were entitled to possession. A petition for review was filed by the Receiver, and the enforcement of the Referee's order was suspended pending a ruling on the petition for review.

* Judge Major of the Seventh Circuit, Judge McAllister of the Sixth Circuit and Judge La Buy of the Northern District of Illinois, all sitting by designation.

While this petition was pending, the debtor, on March 7, 1962, filed a petition for reorganization under Chapter X of the Bankruptcy Act, which on the same date was approved by the Court, and Sulmeyer who had served as Receiver under the Chapter XI proceeding was appointed Trustee. On March 9, 1962, the Court authorized the Trustee upon his application to employ the Nemer firm, who had represented him in his capacity as Receiver in the Chapter XI proceedings. The Trustee's application stated among other things that said attorneys were "fully familiar with the said presently pending matters" before the Referee and the Court, and "have represented your applicant, as Receiver, in said matters"; that in addition thereto, the services of the law firm were needed to "defend suits and proceedings concerning the assets of the said estates" and to take all necessary and proper steps in other matters "connected with the affairs of the said estates"; and that the said attorneys "had considerable experience in these matters," were "well qualified" to represent the Trustee in the proceedings, and had "extensive familiarities with the matters" involved in the prior proceedings.

On March 26, 1962 (seventeen days later), the Trustee applied to the Court "to employ attorneys for specified purposes." His application pointed out that the two review proceedings involving Stores Nos. 7 and 62 were then pending before the Court. The need for additional counsel was described in the Trustee's application, "in order that a completely new approach to the above mentioned matters may be taken * * *, your applicant wishes to employ Walter Ely and Stuart L. Kadison as associate counsel * * * for the specific purpose of representing your applicant in the matters set forth above." On March 26, 1962,

the Court granted the application and appointed claimants associate counsel as requested.[1] It may be noted that this was claimants' first connection with the proceedings which had then been pending in court in one form or another for more than a year.

On May 14, 1962, a stipulation was entered into in open court between claimants as associate counsel and the Nemer firm as general counsel, all representing the Trustee, counsel for the debtor and counsel for the lessors in Stores Nos. 7 and 62, by which it was agreed that the petitions for reclamation filed by the lessors in the Chapter X proceeding be heard on the record made before the Referee in the Chapter XI proceeding. Briefs were filed by the respective parties and a court hearing had on the lessors' petitions for reclamation, resulting in a decision adverse to the lessors, each of which prosecuted appeals to this Court. On December 28, 1962, Sulmeyer, by the Nemer firm as his attorneys, filed a proposed plan of reorganization of Fox Markets, Inc. and its subsidiary debtors. On February 12, 1963, the Court entered an order approving the plan of reorganization, and the name of the debtor became Reorganized Fox Markets, Inc.

In the successful reorganization, Food Fair Stores, Inc., one of the largest retail grocery chains in the United States, purchased control of the debtor and obligated itself to "provide funds or assets for expansion, remodeling and working capital in an amount up to $4,000,000." The approved plan enumerated the stores included therein, but expressly excepted Stores Nos. 7 and 62.

On June 7, 1963, claimants filed a joint application for compensation. This was subsequent to the date of the approval of the plan of reorganization and during the pendency of the two lessor appeals in this Court.[2] The hearing on this application

---

1. Claimants were subsequently employed for certain other limited purposes which are comparatively insignificant insofar as the instant case is concerned.

2. The record discloses that on September 11, 1963, the appeal as to Store No. 7 was dismissed on stipulation of counsel. We

were advised on oral argument that the appeal as to Store No. 62 was subsequently dismissed. The final disposition of these two stores is not disclosed but, as noted, they had previously been excluded from the approved plan of reorganization.

commenced June 18, 1963, despite a motion for continuance by the Creditors' Committee, repeatedly renewed, on the basis that adequate time had not been allowed for preparation. The hearing continued on June 20, June 21 and July 3, 1963. In the meantime, counsel for the Committee sought from this Court a writ directing the Trial Court to grant a continuance which, on July 23, 1963, was allowed on the basis that notice of the hearing was not in compliance with the Federal Rules of Civil Procedure. On the day following, counsel agreed that all evidence previously received might be considered and the hearing was continued to August 14, 1963. At the conclusion of the hearing, on August 23, the Court announced that it would allow $85,000 to each claimant, or a total of $170,000.

In their application for an allowance in the sum of $200,000, claimants place great stress upon their services rendered in connection with Stores Nos. 7 and 62. They allege that the retention of these stores was "an indispensable condition" to the implementation of any plan; that without the successful services of claimants both of these markets would have been lost; that the sales and profits would have been lost; that the probability of a successful reorganization would have been "greatly lessened"; and that the entire proceedings would have fallen into an "adjudication in bankruptcy and piece-meal liquidation." They allege that the questions involved were novel and difficult, and in support thereof incorporate by reference "all papers, pleadings, testimony, depositions and other material" in both the Chapter XI and Chapter X proceedings. They allege that at the time of the initiation of the Chapter XI proceedings there were about 1,500 creditors, some of whom "might have employed" one or both of the claimants; that at the time they assumed their responsibilities the value of the debtor estates was $8,000,000, with $20,000,000 of claimed obligations, and that it is estimated that "by virtue of the successful reorganization" there will be a substantial net worth rather than the insolvent condition existing at the time of the filing of the Chapter XI proceeding "and existing at the time of the employment of your Applicants herein." They allege with respect to "the contingency or the certainty of the compensation" that when they were appointed there was "no certainty" that they would receive reasonable and fair compensation for their services; that had they been unsuccessful with respect to Stores Nos. 7 and 62, "all hope of successful reorganization would have vanished, the Debtors would have collapsed under bankrupcty proceedings," and that claimants would have been inadequately compensated, "if compensated at all."

Claimants attached to their application time sheets showing the number of hours expended by each of them on behalf of the Trustee. These sheets reveal that between March 22, 1962 and May 20, 1963, Ely spent 128.5 hours in connection with Stores Nos. 7 and 62, and 6 hours with other matters, or a total of 134.5 hours. Based on the requested fee allowance, he thus valued his services at $743.00 per hour. During the same period of time, Kadison spent 258 hours in connection with the two stores and 45.4 hours with other matters. He also listed 200.8 hours spent by Kully (a law assistant) in connection with the two stores, and 33 hours on other matters. Thus, Kadison claimed a total of 537.2 hours, including time spent by his assistant. Based on the requested fee allowance, Kadison valued his services and those of his assistant at approximately $186.00 per hour.

Neither claimant Ely nor claimant Kadison's law assistant testified at the hearing in the instant matter. Kadison testified, "Mr. Ely does not keep time sheets * * * and so I kept a record of Mr. Ely's time." Notwithstanding that Ely kept no time record but depended on that kept by Kadison, Ely alleged in his application "that he expended no less than twice the time which is indicated on said exhibits, attached hereto, as having been expended by him." Without any proof of this allegation, the Trial Court found the time spent by Ely to be

269 hours, rather than the 134.5 hours shown by the time sheets.

The award allowed by the District Court valued the services of Ely at $316.-00 per hour, based on the allegation of his application as to time spent ($632.00 per hour, based on the time sheet), and the services of Kadison (including time spent by his law assistant) at $140.00 per hour.

Section 241 of the Bankruptcy Act imposes a standard of reasonableness in fee allowances to trustees and their attorneys. The test of reasonableness reflects a Congressional policy, based upon an extensive history, opposed to the allowance of excessive or exorbitant compensation. The Supreme and other Courts have time and again emphasized this Congressional policy, and all through the cases the guiding test is that of economy. In Realty Associates Securities Corp. et al. v. O'Connor et al., 295 U.S. 295, 299, 55 S.Ct. 663, 665, 79 L.Ed. 1446, the Court characterized referees in bankruptcy as officers of the Court and stated, "Like public officers generally, they must show clear warrant of law before compensation will be owing to them for the performance of their public duties. [Citing cases.] Extravagant costs of administration in the winding up of estates in bankruptcy have been denounced as crying evils." Some of the many other cases to the same effect are Callaghan et al. v. Reconstruction Finance Corp., 297 U.S. 464, 468–469, 56 S.Ct. 519, 80 L.Ed. 804; Wolf et al. v. Weinstein et al., 372 U.S. 633, 639, 83 S.Ct. 969, 10 L.Ed.2d 33. Obviously, under Sec. 241, the Supreme Court admonition as to referees is equally applicable to their attorneys. Finn et al. v. Childs Co., 2 Cir., 181 F.2d 431, 435, and cases cited therein.

■ In our view, the fallacy of the theory advanced by claimants, reflected in the testimony of their witnesses and evidently embraced by the Trial Court, is that the time element as a factor in determining a reasonable allowance was relegated to one of minor importance. We think the cases abundantly support the premise that where fees are sought by an officer of the Court under Sec. 241, the time element is of major importance, although there are other factors which may be given consideration.

In Chicago and West Towns Railways, Inc. v. Friedman et al., 7 Cir., 230 F.2d 364, 367, the Court in discussing fee allowances under Sec. 241 (11 U.S.C.A. § 641) stated, "Reasonable fees for such services depend largely on the hours spent and the allowance per hour." In contrast, the Court pointed out that under Sec. 242, compensation is allowable only where "The services must be beneficial to the estate." To the same effect, In re Solar Mfg. Corp., 3 Cir., 206 F.2d 780, 781. See also London et al. v. Snyder, 8 Cir., 163 F.2d 621, 626; Dickinson Industrial Site, Inc. v. Cowan et al., 309 U.S. 382, 389, 60 S.Ct. 595, 84 L.Ed. 819; In re Food Town, Inc., D.C., 208 F.Supp. 139, 145.

In Newton et al. v. Consolidated Gas Co. et al., 259 U.S. 101, 42 S.Ct. 438, 66 L.Ed. 844, the Court considered fee allowances made to a Master who was serving as an officer of the Court, just as claimants were in the instant matter. The Court made the pertinent observation (page 105, 42 S.Ct. page 439), "He occupies a position of honor, responsibility, and trust; the court looks to him to execute its decrees thoroughly, accurately, impartially, and in full response to the confidence extended; he should be adequately remunerated for actual work done, time employed, and the responsibility assumed. His compensation should be liberal, but not exorbitant."

While Newton in some respects is distinguishable from the case before us, we think it pertinent that the Court in considering the reasonableness of the Master's compensation based its conclusion primarily upon the time claimed to have been expended. The Court drastically reduced the compensation allowed and emphasized that it was "fifteen times the salary of the trial judge and eight times that received by justices of this court." It further compared the award to the salaries of the Mayor of New York City, the Governor and members of the Court of

Appeals of the State, and the Supreme Court in the City of New York. In this connection it stated (259 U.S. page 106, 42 S.Ct. page 440), "Although none of these can be taken as a rigid standard, they are to be considered when it becomes necessary to determine what shall be paid to an attorney called to assist the court. His duties are not more onerous or responsible than those often performed by judges."

█ In the instant matter, the compensation awarded to those called to assist the Court was the equivalent of that received for more than seven years by the judge who made the award, and equals the combined compensation of a three-judge panel of this Court for almost two years. The amount of the allowance on its face was violative of the statutory standard and was an abuse of the Court's discretion. Dickinson Industrial Site, Inc. v. Cowan et al., 309 U.S. 382, 389, 60 S.Ct. 595, 84 L.Ed. 819; Newton et al. v. Consolidated Gas Co. et al., 259 U.S. 101, 105, 42 S.Ct. 438, 66 L.Ed. 844; In re Solar Mfg. Corp., 3 Cir., 206 F.2d 780, 781; Coskery v. Roberts & Mander Corp., 200 F.2d 150, 154.

██ As already noted, the Nemer firm represented Sulmeyer as Receiver from the inception of the Chapter XI proceeding, and was again employed by order of Court to represent him as Trustee under the Chapter X proceeding. It is conceded by all that this is an able and distinguished firm, thoroughly familiar with every facet of the debtor's involved situation. Notwithstanding, claimants were appointed as associate counsel for the sole stated purpose of taking a "new approach" to certain matters involved. This was not a sound reason for burdening the estates with additional counsel. We need not labor this point because it is conceded that claimants are entitled to reasonable compensation for the services rendered. Even so, we think the circumstances of their employment may properly be taken into consideration in making such determination.

Without intending to cast any reflection upon the professional standing of claimants, we are forced to the conclusion that the importance of their services as well as the results obtained are greatly exaggerated. One of their notable achievements, so it is asserted, was their "ability to persuade" attorneys for interested parties to enter into a stipulation (heretofore described) so that the petitions for review then pending relative to the two stores in question could be treated as petitions by the landlords for reclamation. As to this stipulation claimants in their brief state, "Its effect was to deprive the lessors of the benefit of orders theretofore made by the Referee and to place the matter of reclamation at large, to be examined by the District Judge de novo, unrestricted by previous rulings." All we find in the record regarding this stipulation is that counsel for interested parties, including claimants, and counsel for the landlords, while waiting for the Court to dispose of another matter agreed to the stipulation and it was dictated into the record.

The rights of the parties under the two leases depended upon their construction and presented an issue of law. The facts were not in dispute and if the matter had been heard on the petitions for review, the Court would have been unfettered by the Referee's findings. We have studied the briefs submitted by claimants on behalf of the Trustee (substantially the same as to both leases) and the opposing brief by lessors, and we think the question for decision was no more difficult than those which often confront courts and lawyers. We believe that its presentation could have been made as effectively, and the same result achieved, by the Trustee's general counsel or any competent lawyer. To think otherwise is to reflect upon the competency of general counsel to present the issues adequately, as well as upon the ability of the Court to render a correct decision.

Claimants, relying upon Rule 52(a) of the Federal Rules of Civil Procedure, place much emphasis upon the findings

of the Trial Court. In an attempt at some brevity, we shall note only those which may be regarded as crucial. The Court found that Stores Nos. 7 and 62 contributed more than 10% of the debtor's gross revenue; that as a result of the retention of these two stores the estates operated at a profit during the reorganization proceedings; that Food Fair Stores, Inc. purchased control of the debtor's estates, including its interest in the leased stores[3]; that but for the successful efforts of claimants the two stores would have been lost to the estates, which would have greatly lessened the probability that a successful reorganization could have taken place, with the result of adjudication in bankruptcy and piecemeal liquidation, and that it was through the efforts of claimants that the debtor was enabled to make such advantageous arrangements with Food Fair; that if they had been "unable to persuade the Court to conclusions contrary to those reached by the Referee, both stores would have been lost to the Trustee" and the reorganization proceedings probably would have failed; and that the intricacies and importance of the litigation were such as to require skilled legal training and ability.

Some of these findings are without support in the record, while others are conclusions of law, ultimate findings or mixed findings of fact and law, and are not binding upon a court of review. Among many cases on this point see Kuhn v. Princess Lida of Thurn & Taxis, 3 Cir., 119 F.2d 704, 706; Cordovan Associates, Inc. v. Dayton Rubber Co., 6 Cir., 290 F.2d 858, 860; Gediman v. Anheuser Busch, Inc., 2 Cir., 299 F.2d 537, 547; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 491, 57 S.Ct. 569, 81 L.Ed. 755.

These findings furnish the basis for the argument here, (1) that the legal questions relative to the two store leases were intricate and difficult of solution, (2) that it was through claimants' remarkable ability and skill that the Court was persuaded to render a decision adverse to the lessors, and (3) that a decision in favor of the lessors would have resulted in the loss of the stores by the debtor and would have prevented any plan of reorganization. We have previously discussed (1) and (2), and now turn to (3).

Assuming that the retention of the two stores was important to the debtor, it does not follow that they were essential to a plan of reorganization; in fact, the record demonstrates conclusively to the contrary. True, Trustee Sulmeyer testified that during the proceedings under Chapter XI, long before claimants entered the case, he regarded the retention of the two stores as crucial to an arrangement, and without them there might have been an adjudication in bankruptcy. However, at the hearing in the instant matter he stated, "I think today it is not as crucial as it was a year and a half ago." The fact that the plan of reorganization specifically excluded these two stores completely demolishes the contention that Food Fair regarded them as essential. The Trustee testified:

"Q. And as a matter of fact, in the ultimate conclusion they didn't require these two stores, did they?

"A. No, sir.

"Q. The present plan does not require the inclusion of those two stores, does it?

"A. I refused to propose a plan to this court that would require that condition, and they agreed with my bargaining.

"Q. When it was all brought out, they didn't require these two stores at all?

"A. The plan does not so require it."

Witness Nigg, called by the Creditors' Committee, who served as chairman of a negotiating committee during the proceeding, testified without dispute that the retention of the two stores was

---

3. As subsequently shown, Stores Nos. 7 and 62 were excluded from the plan of reorganization as approved.

not essential to a plan of reorganization and that the principal executive of Food Fair had so stated. In this connection it is pertinent to note that an executive of Food Fair attended the hearings but was not called as a witness by claimants to contradict the testimony of Nigg. That the purchase by Food Fair of a controlling interest in the debtor's estates was not dependent upon the inclusion of the two stores was recognized by the Court in its finding, "Should the pending appeals be decided in favor of the landlords, however, Food Fair Stores, Inc. will not have the rights to rescind its purchase."

The plan of reorganization was approved February 12, 1963, and the order appealed from entered September 4, 1963. The record discloses that one of the lease appeals pending in this Court was dismissed September 11, 1963, and we are advised, without record support, that the other was dismissed February 7, 1964. It evidently followed from the dismissal of the appeals that the decision of the District Court relative to the two leases became final. Prior thereto, as shown, the plan of reorganization had been approved, by which Food Fair agreed to pay a designated amount for debtor's properties either with or without these two stores. It cannot be held on this record, as urged by claimants, that the benefit derived from the retention of the two stores inured to the creditors. It appears more likely that Food Fair by reason of the terms of the plan of reorganization reaped the benefit.

■ The Court agreed with claimants' contention that their employment was on a contingent basis and that in all probability they would have received little or no compensation unless they succeeded in preserving the two stores for the estates. The point is without merit; in fact, it appears to be an afterthought. At the time of claimants' employment the debtor had more than $2,000,000 cash on hand, with free assets of some $16,000,000. There was no reason to doubt, then or later, that the Court would award and

that they would receive reasonable compensation as provided by statute. See Levin v. Barker, 8 Cir., 122 F.2d 969, 973. More important, a contract of employment between a Trustee in Bankruptcy and an attorney, for fees based on a contingent basis is invalid. Watkins, Trustee, et al. v. Sedberry et al., 261 U.S. 571, 575, 43 S.Ct. 411, 67 L.Ed. 802.

Claimants make the point that if the debtor had been adjudicated a bankrupt, the unsecured creditors had only a reasonable expectation of receiving $.07 for each dollar of indebtedness but that under the reorganization they will receive assets of a value of $.17 on each dollar of indebtedness. This contention is based upon the testimony of Sulmeyer who gave these estimates as a matter of opinion, but he also testified that the amount which the creditors might receive on reorganization was to be paid in stock and that "it is hard to tell what the stock will be worth on the open market." It is not discernible how this speculative testimony is of any aid to claimants, particularly in view of the fact that the plan of reorganization became effective either with or without the two stores which claimants contend they saved for the estates.

Claimants attach importance to a finding that the gross income of all of the debtor stores amounted to some $10,000,000 per year and that Stores Nos. 7 and 62 were responsible for some 10% of this gross income. No mention is made of the fact, as testified to by Sulmeyer, that the net profit derived from all the stores during the period of claimants' employment was between $85,000 and $100,000, and the witness was not sure whether this was before or after depreciation. What portion of this net profit was derived from Stores Nos. 7 and 62 is not shown. Assuming that they contributed the same proportion to the net income as they did to the gross, it would seem that they contributed to the former some $8,000 or $10,000. Any benefit inuring to creditors stemmed from the net rather than the gross income.

The point as a factor in determining reasonable compensation has little, if any significance.

The contention by claimants that they rendered services in connection with matters other than those relating to Stores Nos. 7 and 62, which were included in the total amount of fees requested, is also of minor importance. As previously shown, the time sheets attached to their claim showed 6 hours were spent by Ely in connection with other matters, 45.4 hours by Kadison, and 33 hours by a law clerk. Kadison as a witness admitted, "Far away the greatest portion of our fee was earned, we feel, by reason of our services in Store No. 7 and Store No. 62." In the absence of enlightenment on the character of services performed on other matters, we assume that they could have been properly performed by any good lawyer.

We now turn to the testimony of Trustee Sulmeyer and J. E. Simpson, the two witnesses relied upon in support of the fee allowance. The testimony of the former is saturated with conclusions and opinions. He testified, "If this Court were to award them $200,000, this estate would not have been treated unfairly," but "a fee of substantially less would be reasonable" and if their requests were cut in half, "they would not be underpaid for their services in this Court." He further testified that if claimants had been unsuccessful in retaining Stores Nos. 7 and 62, they would have been entitled to "a very modest or nominal fee," and that he considered their employment was "contingent." Consistent with his contingent fee theory, he stated that he gave minor consideration to the amount of time expended. Without further comment, we think our previous discussion has obliterated the premise upon which the testimony of this witness was predicated and that it furnishes little, if any, support to claimants' position.

The testimony of Simpson occupies some 65 pages of the reporter's transcript. In response to a long, hypothetical question, he expressed the opinion that the total reasonable value of the services rendered by claimants and their law assistants would range from $175,000 to $225,000. At the conclusion of his testimony the Court stated that it would allow $85,000 for each lawyer, or a total of $170,000. It arrived at this figure by subtracting $5,000 from the minimum of $175,000 referred to by Simpson, because the matter involved a bankruptcy rather than a private proceeding. An analysis of the hypothetical question to which Simpson responded would unduly burden this opinion. We think it sufficient to state that the question contains numerous unproved assumptions and, even more important, the theories and conclusions relied upon by claimants which we have previously rejected. It is our view that the opinion expressed by Simpson is without probative value.

The Creditors' Committee introduced the testimony of Marion W. Engleman and Oscar A. Trippet on the reasonable fee issue. Both were attorneys and qualified to express an opinion. Engleman testified that the customary charge for trustees' attorneys and others in a similar position was not more than $50.00 an hour; that the customary practice was to charge on an hourly basis, and that the hourly rates took into consideration such factors as time spent, the novelty and difficulty of the questions involved, the skill of the attorney, the amount involved and the benefit received.

Trippet, a long time practitioner, testified that the customary charge of the Bar for trial and appellate work was between $50 and $60 an hour, going down for beginning attorneys to $20 an hour. He stated as his opinion that the services of Ely were worth $12,000, those of Kadison $22,500 and those of the latter's law assistant $6,800. The witness figured Ely's services (135 hours) at $60 an hour for straight time and, on the assumption that his services were of extreme value, added 50%. He figured Kadison's services (300 hours) at $50 an hour, and in view of the allegations of the claim added 50%. He figured the compensation for Kadison's law assistant at $20 an hour. The witness testified that he considered the time

spent the most important measuring stick but, on the assumption that the statements in claimants' application for compensation were accurate and that a valuable service had been rendered, he increased the hourly rate accordingly. With reference to the litigation relative to the two leases, he stated that he had examined the briefs and thought that the presentation of the issues involved required no particular legal ability.

■ We doubt if it would serve any useful purpose—certainly it would unduly burden this opinion—to cite or discuss the numerous cases called to our attention. As was stated in London et al. v. Snyder, 8 Cir., 163 F.2d 621, 625, "Compensation allowed others in the same proceeding or in other reorganizations affords little or no evidence of the reasonableness or reverse of an order of allowance under review on appeal." Reference to a few of such cases is illustrative of the theory, previously noted, that the time expended is an important element in determining a reasonable fee award under the Bankruptcy Act.

In Finn et al. v. Childs Co., 2 Cir., 181 F.2d 431, Trustee's counsel devoted 28,905 hours to the reorganization and the District Court allowed compensation at the rate of $18.50 an hour, which the Court of Appeals held excessive. In London et al. v. Snyder, 8 Cir., 163 F.2d 621, Trustee's counsel devoted 757 hours to the reorganization and the District Court allowed a fee of $25,500, or about $33 an hour, which the Court of Appeals held excessive. In In re Food Town, Inc., D.C., 208 F.Supp. 139, Trustee's counsel devoted 3,029 hours to the reorganization and was awarded $77,500, or about $22 an hour. In In re American Tissue Mills, D.C., 120 F.Supp. 950, Trustee's counsel performed 417 hours' service and was awarded a fee of $5,000, or about $12 an hour. In Spence v. Dowd, 7 Cir., 145 F.2d 451, Trustee's counsel spent nearly 1,200 hours and the District Court awarded compensation in the amount of $6,750, or a little more than $5 an hour, which the Court of Appeals affirmed.

Claimants cite cases in support of the rule that orders determining compensation will not be disturbed on appeal absent a clear showing of an abuse of discretion. These cases are of no help to claimants on the record here. In Blanch v. Rankin, 5 Cir., 291 F.2d 217, 219, the Court affirmed the lower Court's award of $950 to the attorney for the Trustee, who had claimed $3,950. In In re Paramount Merrick, Inc., 2 Cir., 252 F.2d 482, the Court affirmed the lower Court's award of $500 to the attorney for the Trustee, who had sought $3,500. In In re Lustron Corp., 7 Cir., 196 F.2d 975, special counsel for the Trustee requested an allowance of $17,200 for 430 hours of service. The Referee allowed $10,000, or $23 an hour, as the "fair, usual and customary charges," which was approved by the District Court and affirmed by the Court of Appeals.

Claimants also cite cases in which larger awards have been sustained than in the instant case. Like the other cases, they are of little help. In Surface Transit, Inc. et al. v. Saxe, Bacon & O'Shea et al., 2 Cir., 266 F.2d 862, the Court affirmed an award of $800,000 to a firm of lawyers who served as general counsel for the Trustee in a reorganization proceeding. The Court stated that they had rendered highly involved and complex legal services for a period of ten years. In In re Central States Electric Corp., D.C., 112 F.Supp. 281, counsel for the Trustee was allowed a fee of $250,000 in a reorganization proceeding which had extended over a period of eleven years. In In re Midland United Co., 3 Cir., 64 F.Supp. 399, counsel for the Trustee was awarded $250,000 in an utility reorganization which had been in Court for more than eleven years, to which the attorney had devoted 11,257 hours.

■ As we have shown, there is no substantial basis in the record for the fee allowance as made by the District Court. It was clearly excessive. Having so concluded, we are faced with the difficult problem of determining a reasonable fee within the contemplation of the Bankruptcy Act. Taking all pertinent factors

into consideration, it is our judgment that a total award of $50,000 would be fair and reasonable. This is at the rate of $74.00 an hour for all time expended by the claimants, including Kadison's law assistant, as shown by their time sheets, or, if we accept Ely's allegation that he spent twice as much time as shown by the time sheets, this allowance for all time spent is at the rate of $62.00 an hour.

The order appealed from is modified by providing a total compensation of $50,000 for claimants, to be apportioned as they see fit. As so modified the order is

Affirmed.