**Decided October 13, 1987**

IN THE DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

| | |
|---|---|
| SAIPAN SECRETARIAL/EMPLOYMENT SERVICES, INC., a Corporation )<br><br>Plaintiff/Appellant, )<br><br>vs. )<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, REXFORD C. KOSACK, INDIVIDUALLY AND AS ATTORNEY GENERAL FOR THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, )<br><br>Defendant/Appellee. ) | DCA NO 86-9023<br>CIVIL ACTION NO. 85-105<br><br>OPINION<br><br> |

ATTORNEY FOR PLAINTIFF/APPELLANT:  Marcia R. Bell
P.O. Box 49
Saipan, CM  96950

ATTORNEY FOR DEFENDANT/APPELLEES:  Keith Partlow
Assistant Attorney General
Office of the Attorney
General
5th Floor, Nauru Building
Saipan, CM  96950

BEFORE:  LAURETA, DUENAS, and NIELSEN*, District Judges

---

*    The Honorable Leland C. Nielsen, Senior Judge, Southern
District of California, sitting by designation.

LAURETA, District Judge:

Plaintiff-appellant Saipan Secretarial/Employment Services, Inc., (hereinafter Saipan Secretarial Services) sued the Government of the Commonwealth of the Northern Mariana Islands and the Attorney General, in both his official and individual capacity, for breach of contract. The suit also sought relief under 42 U.S.C. §1983 for alleged constitutional violations. The case was dismissed by the Commonwealth Trial Court on the Government's motion for summary judgment and, in a subsequent order, the Government was awarded attorney's fees under 42 U.S.C. §1988. Plaintiff appeals both decisions. For reasons set out herein, we now affirm the decision of the Commonwealth Trial Court.

## FACTS

Plaintiff Saipan Secretarial Services is a CNMI corporation run from the home of its president, Stacy Pounds. Pounds was a part-time secretary for the CNMI personnel office in the fall of 1984 when she became aware of a federal program for the development of an automatic records system to compile criminal records data. The program provided grant assistance from the federal government to communities to facilitate the implementation of an integrated criminal records system. Pounds spearheaded the CNMI's efforts to acquire the funding for the program and it was through these efforts that the CNMI obtained a $25,000 grant to develop the program.

The funding was forwarded to the CNMI and steps were initiated to implement the program. Director of Public Safety

171

Felix B. Cabrera instructed Pounds to publish a "Request for Proposals", in an effort to locate prospective contractors for the project, which Pounds published once in a local newspaper. The ad solicited proposals for the first phase of the project which were due one week after the date of publication. Saipan Secretarial Services with its bid of $25,000 was the only entity that responded to the solicitation . At Cabrera's behest, Pounds drafted a letter stating that Saipan Secretarial Services proposal was "selected" and that Pounds was invited to discuss the project and set out priorities for its successful completion.

Subsequently, Pounds and Cabrera signed a standard CNMI contract form governing the work for the project. Pounds then circulated the contract to the other government officials included on the contract form, soliciting their signatures as well. These were the Governor, the Attorney General, the Public Auditor, and the Director of Finance. Attorney General Rex Kosack refused to sign the agreement because, according to Pounds, he preferred that it be awarded to and performed by the U.S. Justice Department. The contract was not signed by the Governor, the Public Auditor, or the Director of Finance, either.

Unable to obtain contract approval, Saipan Secretarial Services sued the CNMI and Kosack, in his individual and official capacity, alleging breach of contract and infringement of constitutional property rights. The Trial Court granted the government's motion for summary judgment on all counts. Additionally, the Trial Court allowed the Government and Kosack $15,047.80 attorney's fees pursuant to 42 U.S.C. §1988. Plaintiff filed a timely notice of appeal.

172

## ISSUES

1. Whether the Trial Court correctly ruled that there was no contract between plaintiff and defendant and, therefore, no deprivation of a property right compensable under 42 U.S.C. §1983.

2. Whether the Trial Court correctly concluded that Kosack was entitled to absolute immunity for his acts in reviewing the contract.

3. Whether the Trial Court correctly applied 42 U.S.C. §1988 when it awarded attorney's fees.

## STANDARD OF REVIEW

Summary judgment is appropriate only if it is demonstrated that there exists no genuine dispute as to any material fact and that movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Court must construe the pleadings, other record evidence, and its attendant inferences most favorably to the party opposing the motion. Harlow v. Fitzgerald, 457 U.S. 800, 816, n.26 (1982). A predicate to a finding of a genuine factual issue which would entitle plaintiff to judgment if she proved her asserted version of the facts is a viable legal theory. Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, 637 F.2d 1376, 1381 (9th Cir.), cert. denied, 454 U.S. 831 (1981).

The Appellate Division reviews the Trial Court's findings of fact under a clearly erroneous standard. Schenk v. Government of Guam, 609 F.2d 387, 390 (9th Cir. 1979). Conclusions of law are freely reviewable. Official Creditor's Committee of Fox Markets, Inc. v. Ely, 337 F.2d 461 (9th Cir. 1964) cert. denied, 380 U.S. 978 (1965).

173

## ANALYSIS

I. Whether Cabrera's letter accepting Plaintiff's proposal constituted a binding contract.

The trial division of this Court has held that in analyzing contracts to which the Government is a party the Government's applicable rules and regulations determine and define when a contract is enforceable. Hill v. CNMI, Civ. No. 82-0007, Decision, May 16, 1984, p.6 (citing National Treasury Employees Union v. Reagan, 663 F.2d 239 (D.C. Cir. 1981)).

On September 14, 1984, the Governor issued to all department heads a "Revised Executive Branch Delegation of Authority to Contracting Officers and Procurement Policy." This memorandum set out, inter alia, the procedures for contracting for government services, including independent contract work like that contemplated under the project which is the basis of this suit. Under these procedures, which are still in effect, contracts are prepared by a contracting officer and approved by the Personnel Officer, who then transmits the contract to the Attorney General, who reviews the contract and approves it as to "form and legal capacity." The Attorney General then forwards the contract to the Director of Finance for review and certification of available funds after which the contract is sent to the Governor, who signs the contract and returns it to the contracting officer. The independent contractor, plaintiff in this case, then signs the contract.

Plaintiff alleges that a contract was formed when Cabrera signed the letter that Pounds had drafted selecting Saipan Secretarial Services proposal for the project. As the

174

Trial Court found, this position runs contrary to the procurement regulations which, as Hill held, are controlling. Cabrera's letter fell short of constituting a binding contract for two reasons. First, Cabrera was the Director of Public Safety and did not have authority to enter into contracts for services to be performed for the Judiciary, which services the Trial Court determined were included in the scope of the proposed agreement. Second, the agreement anticipated expending $25,000, which necessitated the signature of the Governor, the Director of Finance, the Attorney General, the Public Auditor, and the Personnel Officer. In short, Cabrera's "acceptance" letter did not constitute a contract under CNMI regulations and plaintiff's action to enforce the terms of the letter was properly dismissed.

This conclusion readily dismisses plaintiff's §1983 claim against the Government. Since there was no contract, there was no protectible interest. See Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972). (To be protectible there must be an actual right and not merely an expectation of one).

II. Whether the Court properly applied "Mother Goose" to Kosack.

Plaintiff's third cause of action is against former Attorney General Kosack in his individual capacity. Plaintiff alleged that Kosack's failure to sign the contract deprived plaintiff of its constitutional right to contract, as well as its property right in the contract, in contravention of due process. Plaintiff sued Kosack individually claiming that he knew or should have known that his acts were unconstitutional and,

**175**

therefore, outside the scope of his authority. Plaintiff points out that under the Governor's memorandum, referred to above, Kosack was required to review the contract for "form and legal capacity" and obligated to sign the contract if those requirements were satisfied. According to Plaintiff, the parties had capacity to contract and the form of the contract, a CNMI form, was proper. Given these two conditions, Kosack was obligated to sign the agreement.

The Attorney General is empowered by the CNMI Constitution to act as legal advisor to the Governor and the executive departments. His very function is to serve as legal counsel to the Government. To handcuff the Attorney General, as plaintiff has suggested, by restricting his authority when reviewing contracts to a determination that the parties are "of legal age and sober" (Appellee's Brief p.25), would negate the purpose of having the Attorney General review contracts. The Trial Court found that Kosack had authority to determine if the contract was in the best interest of the Commonwealth and this Court adopts the reasoning and the conclusion of the Trial Court.

Stemming from this, plaintiff's third cause of action, is the question of the applicability of the doctrine of immunity. Plaintiff argued below and argues on appeal that Kosack does not have absolute or qualified immunity from suit in this case because he was not acting as the prosecutor in a judicial setting but rather was giving advice to the Government. The Government cites Mother Goose Nursery Schools Inc. v. Sendak, 770 F.2d 668 (7th Cir. 1985), cert. denied, 106 S.Ct. 884 (1986) for the proposition that immunity extends to these acts. In

176

Mother Goose, the Attorney General of Indiana had been delegated the duty of reviewing the form and legal sufficiency of proposed contracts. When the attorney general disapproved plaintiff's contract because its president and director had criminal records, plaintiff sued. The Seventh Circuit affirmed the district court's holding that the attorney general was protected by absolute immunity from suit for these acts. Though the CNMI regulations (and 1 CMC §2153) provide that the Attorney General reviews contracts as to form and legal capacity, the Trial Court concluded that the Attorney General is accorded the same protection as was the Attorney General of Indiana in Mother Goose.

This conclusion is freely reviewable by this Court. Schenk, 337 F.2d at 463. Though the statute and the procurement regulations provide that the Attorney General is to review contracts as to form and legal capacity, a narrow or restrictive reading of this provision would lead to a incongruous result. The Attorney General would be required to sign illegal contracts provided they were in the proper form and the parties were not incap.citated in any way. The Attorney General would have to disregard the constitutional mandate that he provide legal advice to the government in order to stay within the constrictions of the regulations.

Even plaintiff has difficulty keeping straight the Attorney General's duties regarding contracts. It states in paragraph 17 of its amended complaint that Kosack had a duty to review the contract as to form and legal sufficiency. The contract which Pounds signed and attached to the complaint

**177**

contains a line for Kosack's signature which states, "approved as to form and legal sufficiency." Inaccurate drafting of 1 CMC §2153 and the Governor's memorandum on procurement cannot control the obvious purpose and intent of having the Attorney General review contracts, and when acting in this regard, he is shielded by absolute immunity.

III. Whether plaintiff's action was frivolous, unreasonable, and without foundation.

The final issue raised in this appeal is whether the Trial Court properly awarded the Government attorney's fees pursuant to 42 U.S.C. §1988. Section 1988 provides that the Court may allow attorney's fees to the prevailing party in a suit brought under §1983. In the normal course of events, the plaintiff may be allowed fees if she proves that the Government violated her constitutional rights. (Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975) cert. denied 425 U.S. 951 (1976)). But, in limited situations, the prevailing government defendant is entitled to attorney's fees. Hughes v. Rowe, 449 U.S. 5 (1980). However, the prevailing government defendant must show that it is more than just a prevailing party, it must also show that the lawsuit was "frivolous, unreasonable, and without foundation, even though not brought in subjective bad faith." Hughes, 449 U.S. at 14 (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)). The Government successfully argued below that this was the case. First, it argued that there was never a contract between Saipan Secretarial Services, Inc, and the Government. It argued that the procurement regulations

**178**

rendered the suit groundless.[1]  Additionally, as was brought out through discovery, though the contract price for the project was $25,000, Pounds estimated that the cost of implementing the program would have been $40,000, inclusive of a 10% profit; a net loss of $11,000.[2]  The Trial Court pointed out that under the Restatement of Contracts, §328, which the court is bound to apply, the measure of damages in a breach of contract suit is loss of profits.  The fact that plaintiff would have lost money if it had been awarded the contract renders its cause of action in contract groundless, which causes the other claims to collapse as well.

The Appellate Court reviews attorney's fees awards for abuse of discretion. Jensen v. Stengel, 762 F.2d 815, 817 (9th Cir. 1985) (citing Parks v. Watson, 716 F.2d 646, 664 (9th Cir. 1983)).  Hill stands for the proposition that no government contract comes into existence absent compliance with government regulations controlling government contracts.  The Restatement of Contracts, §328, provides that contract damages are measured by loss of profits.  The combination of these two propositions renders plaintiff's suit without foundation.  There was no contract and a cursory reading of Hill and the government regulations would have counseled that no cause of action in contract existed.  Without a contract, there is no protectible

---

[1]  The issue of government immunity under the 11th Amendment and/or common law immunity was also raised, but we do not touch upon this in light of the absence of a contract.

[2]  Gleaning from the record, the cost of operating the program would have been between $36,000 and $37,000 with an additional $3000 to $4000 profit.

**179**

interest.    And finally,  Mother Goose  clearly  supports  the Government's position that Kosack enjoyed absolute immunity from suit for actions stemming from his advice concerning government contracts.

The Trial Courts's finding that plaintiff's suit was frivolous,   unreasonable,   and   without   foundation   and   that defendant   was   entitled   to   an   award   of   attorney's   fees   is supported by the facts of this case.

The Trial Court is AFFIRMED.

_____
Judge Alfred Laureta

_____
Judge Cristobal C. Duenas

_____
Judge Leland C. Nielsen