**In the Matter of COAST INVESTORS, INC., a Washington corporation, Debtor.**

**No. 21573.**

United States Court of Appeals
Ninth Circuit.

Jan. 15, 1968.

Payton Smith (argued), of Howe, Davis, Riese & Jones, Seattle, Wash.

Before MERRILL and BROWNING, Circuit Judges.*

BROWNING, Circuit Judge:

This is an appeal from an order of the district court fixing fee allowances in proceedings under Chapters X and XI of the Bankruptcy Act, 11 U.S.C. § 501 et seq. and § 701 et seq., and is taken pursuant to leave of this court as required by section 250 of the Bankruptcy Act, 11 U.S.C. § 650 (1964).

The debtor, Coast Investors, Inc., sold interest-bearing debentures to the public and invested the proceeds in mortgages, real estate contracts, and real estate. On March 5, 1964, Coast Investors, Inc., filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. On June 4, 1964, the proceedings were transferred to Chapter X.

On March 17, 1966, a plan of reorganization was approved providing for long-term liquidation of the debtor through a continuing trusteeship under the court's supervision.

The approved plan required fee claimants to file applications for allowance by a date fixed in the plan. The claims filed by the Receiver-Trustee and the Referee-Special Master are not at issue here. The firm of Howe, Davis, Riese & Jones requested $56,442.50 as compensation for services rendered as counsel for the Receiver-Trustee. Joseph C. McKinnon requested $18,000 as compensation for services rendered as attorney for a committee of certificate holders.

The district court referred all applications to the Referee as Special Master. The Referee-Special Master held an extensive evidentiary hearing. He also received a written submission from the Securities and Exchange Commission. The SEC recommended reduction to $40,000 of the fee requested by Howe, Davis, Riese & Jones, and payment in full of the $18,000 fee requested by McKinnon.

The Referee-Special Master recommended allowance of $50,000 to Howe, Davis, Riese & Jones, and $10,000 to McKinnon. The district court adopted the Referee-Special Master's recommendations.[1]

McKinnon appeals, seeking to increase the fee allowed him and to reduce that allowed to the attorneys for the Receiver-Trustee. The SEC supports McKinnon's appeal as it relates to his fee.

McKinnon and the SEC contend that the district court and the Referee-Special Master applied an erroneous legal standard in determining McKinnon's fee. The district court stated that in approving the Referee-Special Master's recommen-

---

* George T. Washington, Senior Circuit Judge, District of Columbia Circuit, sitting by designation, heard the oral arguments in this case but did not participate in the decision.

1. Fees and expenses allowed to all claimants totaled $78,751.19. The allowance to be made to the Referee-Special Master has not been determined. The estimated value of the assets of the estate is approximately $700,000. Liabilities total $1,430,151, including $1,265,861 due to public holders of investment certificates. The assets may be increased if recovery is obtained in pending litigation against persons charged with mismanagement of the debtor prior to bankruptcy.

dation the court was guided in part by the consideration "that the nature of the reorganization involved herein is orderly liquidation rather than true reorganization." The court noted that "It seemed clear from the beginning there was little, if any, hope for a true reorganization of the debtor corporation," and that "the Trustee early considered orderly liquidation would provide the most effective solution." Because "this proceeding throughout has been in the nature of a liquidation" rather than "the usual rehabilitation proceeding under Chapter X," the court concluded that decisions and arguments relating to fee allowances in the latter type of reorganization were "not entitled to great weight under the special circumstances of the case." The Referee-Special Master referred to the same factors, noting that the Trustee recognized the probability of liquidation from the outset and that the plan adopted was a simple one, providing for little more in its basic concepts than would straight bankruptcy. McKinnon and the SEC contend that these comments reflect an erroneous view that the standard to be applied in determining proper fees depends upon whether the reorganization plan provides that the debtor shall continue in existence or be liquidated.

 Since the Act provides the same fee standards for all Chapter X reorganizations whatever form the plan may take, we agree that the standards to be applied were not changed by the circumstance that the plan adopted in this case provided for liquidation. However, for reasons stated below, the fee allowances which were appropriate under those standards depended in considerable part upon the factual circumstances to which the court and Referee-Special Master referred.[2] We are satisfied that the court and the Referee-Special Master held no more than this.

McKinnon also contends "that the recommendation for allowances of the S.E.C. * * * should be followed unless the reorganization judge showed reasons otherwise based on specific findings." Scribner & Miller v. Conway, 238 F.2d 905, 907 (2d Cir. 1956). See also Finn v. Childs Co., 181 F.2d 431, 436 (2d Cir. 1950). But the Referee-Special Master did support his reduction of the allowance recommended by the SEC for McKinnon by specific findings, summarized below, which the trial court adopted.

 The parties agree that as attorney for the creditors' committee McKinnon was entitled to compensation from the estate only for services which benefited the estate. See In re Solar Mfg. Corp., 215 F.2d 555, 563 (3d Cir. 1954); In re Porto Rican American Tobacco Co., 117 F.2d 599, 601 (2d Cir. 1941). See also Dickinson Industrial Site v. Cowan, 309 U.S. 382, 389, 60 S.Ct. 595, 84 L.Ed. 819 (1940). And here, as in other situations in which the value of an attorney's services is in question, it is proper to consider "the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to conduct the cause." Canon 12, Canons of Professional Ethics of the American Bar Association.

The Referee-Special Master found that much of the time for which McKinnon claimed compensation was devoted to work on a plan of reorganization of the debtor. Over a quarter of McKinnon's time entries included contacts with SEC personnel concerned with this subject. As we have noted, the Referee-Special Master also found that the plan adopted was basically simple, providing for little more than orderly liquidation—it did not involve those complex arrangements for additional financing or difficult compromises and adjustments among competing interests which are common to reorgani-

---

**2.** We are of course mindful of the fact that Congress desired to encourage bona fide efforts to reorganize distress business enterprises so that they might continue in existence, even where prospects for success of such efforts might appear slim. Failure to achieve a successful re-

organization should not diminish the compensation allowed for useful services. See § 246 of the Bankruptcy Act, 11 U.S.C. § 646 (1964); 6A Collier Bankruptcy ¶ 13.02 at 914–15, ¶ 13.14 at 994 nn. 14, 15.

zation plans which continue the debtor in existence. He further found that the concept of orderly liquidation embodied in the plan was obvious to the Trustee from the outset and was neither novel nor attributable to McKinnon's special professional insight or skill. Finally, he found that the plan provided little advantage to the estate over straight bankruptcy. In light of these findings the considerable portion of McKinnon's claim which was based upon services performed in connection with the plan did not justify a substantial fee allowance.

■■ The balance of McKinnon's services necessarily related primarily to the administration of the estate. The furnishing of such services is the responsibility of the Trustee and his attorneys. Rudnick v. Coney Island Boardwalk Co., 181 F.2d 775 (2d Cir. 1950). McKinnon could be compensated for performing such services only "in so far as the trustee and his attorney did not perform them, and, but for [McKinnon], would not have performed them * * * " Id. at 776. See also Finn v. Childs Co., 181 F.2d 431, 436, 440 (2d Cir. 1950); In re Postal Tel. & Cable Corp., 119 F.2d 861, 863 (2d Cir. 1941); In re Porto Rican Tobacco Co., supra at 602.[3] The Referee-Special Master found that the estate had not been benefited by the majority of McKinnon's services of this nature. He found that these services were "voluntary and duplicative since the trustee and his attorney were at all times able to perform their administrative functions and in fact did perform them." McKinnon duplicated efforts of the Trustee and his attorneys, the Referee-Special Master concluded, because of a sincere belief that these officers of the estate would not function effectively; but the Referee-Special Mas-

ter found that McKinnon's concern was not justified, and that the Trustee and his attorneys had in fact performed their duties "most creditably."

The Referee-Special Master also found that the estate had not benefited from a part of the very considerable time McKinnon spent in communicating with his own clients, and that a portion of the time which McKinnon had devoted to challenging recommendations of the Trustee resulted only in lost motion and expense to the estate. Finally, the Referee-Special Master found that McKinnon's claim included more than one hundred hours of time for services not yet rendered.

On the other hand, the Referee-Special Master concluded that some of McKinnon's services were of value to the estate. He found that McKinnon's constant overseeing of the activities of the Trustee enabled McKinnon to interpret the Trustee's actions to McKinnon's clients and eliminated some of the need for communication by the Trustee with this group of creditors, that the adversary atmosphere which McKinnon created contributed to a closer examination by the Trustee of prospective courses of action, and that McKinnon's participation in the initial proceedings and the 21A proceedings, and in drafting technical provisions of the plan, had been useful.

As we have noted, the Referee-Special Master concluded that an appropriate allowance for McKinnon's services, both in connection with the development and adoption of the plan and the administration of the estate, was $10,000.

■■ In view of the departure of the allowance from SEC's recommendations, we have examined the record relating to the Referee-Special Master's findings

---

3. Duplication by a creditors' committee of the Trustee's work, which is not compensable, must be distinguished from duplication of work on the development of the plan of reorganization, which may be compensable. And where attorneys for a number of committees participate in the performance of a service of the latter class, which benefits the estate, the appropriate course, generally, is to determine the proper fee for the service performed and distribute the total fee among the attorneys who have participated in performing it. Finn v. Childs Co., 181 F.2d 431, 436 (2d Cir. 1950).

with particular care. The Referee-Special Master's intimate knowledge of the day-to-day administration of the estate and the district court's more general but nonetheless considerable familiarity with the course of the proceedings were of particular importance to an accurate appraisal of McKinnon's detailed and wide-ranging activities.[4] Giving due weight to this consideration [see Finn v. Childs Co., 181 F.2d 431, 435 (2d Cir. 1950); Gochenour v. Cleveland Terminals Bldg. Co., 142 F.2d 991, 995 (6th Cir. 1944); Cooke v. Bowersock, 122 F.2d 977, 981 (8th Cir. 1941)] we are satisfied that the findings as to the nature and value of McKinnon's services are sufficiently specific and not clearly erroneous, and that McKinnon failed to establish either that the debtor's estate benefited from services for which compensation was denied or that the value of beneficial services was greater than that attributed to them.

Finally, McKinnon challenges the allowance to him on the ground that the Referee-Special Master was biased against him. No such claim was made to the district court, and, in any event, it is not supported by the record.

McKinnon also attacks the allowance to the Trustee's attorneys on a number of grounds. None appears to us to have merit. The standard applicable in determining the fee allowance to the Trustee's attorneys is that of reasonableness, rather than demonstrated benefit to the estate. Official Creditors' Committee of Fox Markets, Inc. v. Ely, 337 F.2d 461, 465 (9th Cir. 1964); In re Chicago & West Town R. R., 230 F.2d 364, 367 (7th Cir. 1956); see also In re McGann Mfg. Co., 188 F.2d 110, 111 (3d Cir. 1951). We think this standard was met here. McKinnon's contention that the order appointing "Payton Smith of Howe, Davis, Riese & Jones" as attorney for the Trustee did not authorize compensation for the services of any member of the firm other than Smith

is reduced to a mere formalism by the district court's statement that it made the designation "with the definite understanding that the services of the firm would be available and used." McKinnon's remaining arguments involve factual disputes which were resolved against his position in findings not clearly erroneous.

Affirmed.

4. McKinnon's application was based upon a 44 page itemization of services per-formed on 400 different dates over a period of two years.