In re FARRINGTON MANUFACTURING
COMPANY et al., Debtors (two cases).

NEW ENGLAND MERCHANTS
NATIONAL BANK, Appellant,

v.

Gerald M. O'DONNELL, Trustee,
Appellee.

Robert E. McLAUGHLIN and Steptoe &
Johnson, Counsel for Trustee in
Reorganization, Appellants,

v.

Gerald M. O'DONNELL, Trustee,
Appellee.

Nos. 75–1354, 75–1355.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 10, 1975.

Decided March 23, 1976.

Daniel A. Carrell, Richmond, Va., Calvin H. Cobb, Jr., Irving H. Picard, Acting Chief Counsel, Div. of Corporate Regulation, S.E.C., Washington, D.C. (Stanley Keller, Jeffrey Swope, Palmer & Dodge, Boston, Mass., Lawrence E. Nerheim, Gen. Counsel, David Ferber, Sol., S.E.C., Robert E. McLaughlin, John M. Edsall, Steptoe & Johnson, Washington, D.C., on brief), for appellants.

Stewart C. Economou, Alexandria, Va., for appellee.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge.

These are appeals from orders of the District Court drastically reducing the allowance of counsel fees for the former trustee of the debtors in reorganization and the claim of the indenture trustee for certain services, costs and expenses. We reverse.

The reorganization proceedings, in connection with which these allowances were requested, commenced in January, 1971. The debtor Farrington Manufacturing Company was originally a manufacturer of jewelry and eyeglass cases but it had expanded into the development of credit cards, credit-card imprinters and optical-character recognition equipment. In the late 1950s it began to broaden even farther its operations and embarked upon a major domestic and foreign acquisition program, becoming in the process a minor multinational corporation with two subsidiaries, Farrington Electronics, Inc. and Farrington Overseas Corporation, both of which are involved in the Chapter X proceedings. In its expanded operations, it incurred substantial indebtedness, including two debenture issues, one of which was placed domestically and the other with European investors. As it expanded, it experienced the not infrequent pains of other enterprises engaging in overexpansion into new fields, involving substantial technological problems; by 1969, it was faced with the inability to meet interest and principal payments of its debenture indebtedness incurred as a result largely of these expanded operations.

After fruitless efforts to solve these mounting financial difficulties, Chapter X proceedings were filed. Efforts to reorganize in the course of the proceedings as a continuing concern proved ultimately futile—though the trustee and his attorneys had made a good faith effort to effect a reorganization. The trustee and his attorneys did, however, effect an orderly liquidation of most of the debtors' properties as going concerns. From this liquidation, cash assets of approximately $4,600,000 were created as against approximately $40,000,-000 in debts.

These appeals are concerned with the allowance of fees to counsel for the former trustee for services rendered up to June 30, 1973 and to the Indenture trustee, the New

England Merchants National Bank, as made by the District Court following a hearing on September 3, 1974. Prior to this hearing, both the Bankruptcy Judge, to whom the proceedings had been referred, and the Securities Exchange Commission (SEC) had filed their recommendations on such allowances. The SEC had recommended that counsel for the trustee be allowed a fee for services to June 30, 1973, of $575,000, plus all expenses; the Bankruptcy Judge's recommendation was in the amount of $450,000 for services rendered, together with full reimbursement of expenses. In their request for an allowance, counsel had asked for $673,200, along with $36,094.28 in reimbursement of expenses.[1] So far as the indenture trustee was concerned, the SEC and the Bankruptcy Judge recommended $12,278 as full reimbursement of expenses incurred prior to bankruptcy, payable out of sums available to debenture holders; and for the period of bankruptcy, the SEC recommended a fee for services of $9,000, with $1,420 in expenses, both payable as administrative expenses of the estate, while the Bankruptcy Judge recommended $7,500 for these services along with reimbursement of expenses.

The District Court determined at the hearing that it wished to dispose of all fees to date of hearing and directed that the record be supplemented with a bill for services and expenses to date, to be filed with the Court within a week. On the basis of this record, the District Court entered its order allowing counsel for the trustee a fee of $350,000 in full payment for all services and expenses up to date of its order (i. e., November 14, 1974), less the payment of $70,000 already received by counsel. It adopted the Bankruptcy Judge's recommendations on the allowances in favor of the indenture trustee, with these two exceptions:

(a) The allowance for expenses during the pre-bankruptcy period was reduced by 50%;

(b) The allowance for the bankruptcy period was to be paid, not as an administrative expense, but out of the funds available for distribution among the Debenture holders.

Both counsel for the trustee and the indenture trustee have appealed. We shall treat the two appeals separately. In considering the appeal of counsel for the trustee, we must distinguish between the request of counsel for the trustee for an allowance on account of services rendered up to June 30, 1973, and for an allowance on account of services rendered between June 30, 1973, and November 14, 1974.

### 1. Claim of Counsel for Trustee

### (a) Claim for Services up to June 30, 1973.

The Bankruptcy Act provides that counsel for a trustee in reorganization proceedings shall receive "reasonable compensation" for its services.[1a] The Court, in determining "reasonable compensation," under the Act, is not to use "benefit to the estate" as its criterion.[2] This is so because counsel for the trustee is an officer of the court charged with specific duties and responsibilities for the performance of which it is entitled to fair recompense. This, of course, does not mean that it is to be paid for unnecessary services or for services ineptly done. But, so long as its services are within the proper range of its duties and are performed with reasonable competency, it is to be compensated, not necessarily by the same yardstick as "similar services command in purely private employment"[3] but sufficient in amount to induce competent counsel to undertake the labors incident to a reorganization proceeding in reliance on

---

1. The recommendations of the Bankruptcy Judge and the SEC as well as the application of counsel contemplated that the sum of $70,000, previously allowed and paid as an interim allowance, should be credited against the allowance recommended or requested.

1a. Bankruptcy Act, § 241, 11 U.S.C. § 641.

2. See, In Re Coast Investors, Inc. (9th Cir. 1968) 388 F.2d 622, 627; Brown v. Hammer (4th Cir. 1953) 203 F.2d 239, 241.

3. See, In Re Mt. Forest Fur Farms of America (6th Cir. 1946) 157 F.2d 640, 647.

the willingness of the Court later to deal fairly with it. In determining what is reasonable compensation in a particular case, the Court must give consideration to the time spent,[4] to the character of the services rendered, the results achieved, the size of the estate, the evidence relating to the services rendered and "the economic spirit" of the Act itself.[5] All of these factors should be taken into consideration in arriving at a balance between the public interest in attracting competent counsel in bankruptcy proceedings while doing equity to the estate and its creditors.[6] The District Court, in applying these standards, is to be given broad discretion and that discretion "is not to be interfered with short of a showing that it has been abused. Such an abuse [however] may stem from a factual basis or from the application of an improper legal standard."[7] We conclude that, in fixing the compensation of the counsel for the trustee for the period ending June 30, 1973, the District Court clearly erred both in the factual basis for his conclusion and in the application of proper legal standards.

■ The record seems unanimous on the diligence and competency with which coun-

sel for the trustee discharged its responsibilities.[8] Both the Bankruptcy Judge, under whom the reorganization proceeded, and the SEC, which followed closely and intimately the proceedings, so attest. The scope and extent of those services are fully detailed in the statement submitted by counsel. No party to the proceedings questioned either the performance or propriety of the services thus detailed or, save for the SEC, the reasonable charge made therefor by counsel in its application. The SEC carefully reviewed the application and, while finding the services rendered of a high quality, recommended a fairly substantial reduction in the amount requested by counsel. So far as its opinion indicates, the District Court gave little or no weight to any of these circumstances in reaching its independent judgment. It actually made no reference to and apparently disregarded in its opinion the SEC's evaluation of counsel's services and recommendation of a proper allowance therefor. It predicated its decision largely on its feeling that the proceedings had been needlessly prolonged and that the services of counsel were "routine" and "substantially" related to a base-

---

**4.** Indeed, some courts have indicated that the time spent is a primary factor in fixing compensation. Illustrative of this reasoning is *Chicago & West Towns Railways v. Friedman* (7th Cir. 1956) 230 F.2d 364, 367, *cert. denied* 351 U.S. 943, 76 S.Ct. 837, 100 L.Ed. 1469: "Reasonable fees for such services [services under § 241, 11 U.S.C. § 641] depend largely on the hours spent and the allowance per hour." Other courts speak of the time factor as "of major importance, although there are other factors which may be given consideration." *Official Creditors' Committee of Fox Markets, Inc. v. Ely* (9th Cir. 1964) 337 F.2d 461, 465.

    *See, also,* statement of counsel for the SEC that "in bankruptcy you are supposed to keep contemporaneous time records and submit them to the court."

**5.** *In Re National Discount Corporation* (W.D.S. C.1962) 211 F.Supp. 261, 262. *See, also, In Re Imperial "400" National, Inc.* (3d Cir. 1970) 432 F.2d 232, 237; *In Re Colonial Distributing Company* (D.S.C.1970) 314 F.Supp. 418, 420; Meyers, *Appellate Review of Attorney Allowances in Chapter X Reorganizations,* 53 Colum.L.Rev. 1039, 1068–70 (1953).

**6.** *Jacobowitz v. Double Seven Corporation* (9th Cir. 1967) 378 F.2d 405, 408. This balancing

rule is set forth in Bankruptcy Rule 219(c), 11 U.S.C.: "(1) * * * The compensation allowable by the court to a[n] * * * attorney * * * shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors."

**7.** *Massachusetts Mutual Life Insurance Company v. Brock* (5th Cir. 1968) 405 F.2d 429, 432, *cert. denied* 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969); *Milbank, Tweed & Hope v. McCue* (4th Cir. 1940) 111 F.2d 100, 101.

**8.** The Bankruptcy Judge found that counsel for the trustee was "diligent in its efforts to fulfill its obligations as counsel to the Trustee not only in the disposition of the assets but in conducting the proper investigation for the 167 Report as well as that involving alleged misrepresentations to certain stockholders."

    The SEC concluded that counsel had "fulfilled its function with dispatch," had engaged in "no duplication of effort" and was entitled to "full credit for the quality and the efficiency of the work done."

less suit filed in New York. We conclude the District Court erred in disregarding as it did the report of the SEC, as well as in its appraisal of the counsel's services and in its preoccupation with the New York litigation.

The primary debtor in this case was found insolvent in November, 1971. The District Court apparently assumed that, when a finding of a debtor's insolvency is entered in a reorganization proceeding, any attempt thereafter at reorganization is foreclosed and liquidation of the debtor is mandated and should quickly follow. Following this line of reasoning, it concluded that any effort to reorganize the debtor, in whole or in part, after such a finding would be inappropriate and would warrant little consideration in the allowance of fees. Contrary to the District Court's reasoning, however, a finding of insolvency does not mean that reorganization of the debtor is impractical or forecloses efforts in this direction in a reorganization proceeding; on the contrary, it may be but the predicate for a plan of reorganization, in which both creditors and stockholders make reasonable adjustments in their rights and claims in order to achieve a reorganization which it is hoped will be later beneficial to both groups. And that was apparently the opinion of the Bankruptcy Judge, to whom the proceedings had been referred, the SEC, which was closely following the proceedings, the creditors and the stockholders who were directly interested, as well as the trustee and his counsel in this proceeding. All assumed early in the proceedings that the imprinter division of the debtor's business could be reorganized into a viable enterprise, capable of competing successfully, to the benefit of all concerned. It was recognized, on the other hand, that there were other parts of the debtor's business which could not be made profitable by any reorganization and should be abandoned. As we have already observed, the trustee and his counsel accordingly undertook, under the supervision of the Bankruptcy Judge and with the approval of all parties in interest, to dispose so far as possible of the phases of debtor's business which were considered without any prospect of reorganizing as going concerns and to continue as a going business the imprinter operation of the debtor. This was done. After a year or so and after the trustee and his counsel had made a good faith effort towards a reorganization, however, it became evident that the imprinter division could not be successfully operated through a reorganization as a going business. The trustee and his counsel were able, though, as a result of the continued operation of the imprinter business as a going concern during this time, to sell this division on far more advantageous terms than they could had that part of the business been sold in a precipitate liquidation.[9] When the sale of this division was made, it was necessary to amend the plan or reorganization which had earlier been considered, and it was this amended plan of reorganization which was before the Court at the same time as the allowance of fees. Counsel for the trustee did not thus prolong needlessly the reorganization expenses but in its efforts sought in good faith to promote a reorganization of that part of the debtor's business which all the parties in interest thought at the time would be beneficial. It was improper to fault counsel for these efforts or to prejudice it unfairly in its fee allowance because the efforts were unsuccessful.

Nor were counsel's efforts during this period of attempted reorganization properly characterized as generally "routine." Even those that might be so described were not without complexity. Much of this complexity stemmed from the "inaccuracy of records" maintained by the debtor and its subsidiaries. This very complexity necessitated considerable hours of inquiry and reconstruction of records. Many of the claims against the debtor were of the normal type but they presented often involved questions both of law and of fact far out of the "routine." This was particularly true of the tax claims, which required considera-

9. This division was sold as a going concern for $3,000,000.

ble time and effort on the part of counsel. Thus New York State filed a tax claim of over $61,000. In this claim counsel eventually secured a reduction to less than $3,000. The State of Delaware likewise claimed a tax liability of over $33,000, which was finally reduced to less than $5,000. There were other substantial reductions in tax claims achieved by counsel. These tax reductions, over all, totalled more than $107,000. For these services, the SEC, using its hourly rate for services, would allow approximately $12,750, which would appear to be reasonable. The preparation of the § 167 [10] report itself, the preparation of which the statute commands, too, was not a "routine" project.[10a] The propriety of its preparation and the adequacy of its coverage received the favorable comments of both the Bankruptcy Judge and the SEC.[11] Moreover, the debtor and its subsidiaries were involved in considerable patent litigation. All these suits had to be disposed of and counsel seems to have effected dispositions of all of them, with the assistance of associate patent counsel, with dispatch and

with considerable benefit to the estate. From these suits the debtor realized in recoveries $44,000. The District Court, also, took no note of the claims in favor of the debtor, which counsel successfully prosecuted and from which it in a number of instances secured not inconsequential recoveries.[12]

■ The District Court was considerably disturbed in its consideration of counsel's application by two suits filed in New York.[13] In one of these, the debtor's indenture holders had sued the underwriters and auditors who had marketed and distributed such debentures. Under the authority of the Bankruptcy Judge, the trustee participated in this suit. This action was supported by the SEC. The basis for this suit was indicated in the § 167 investigation. It is true that *Caplin v. Marine Midland Grace Trust Co.* (1972) 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 denied to the trustee standing to maintain such an action in his own name, but counsel's investigation (which preceded the *Caplin* decision), if it aided the

10. 11 U.S.C. § 567.

10a. In noting that counsel "pulled the laboring oar in presenting the plans of reorganization," the SEC commented on the fact that "[t]he thoroughness of this [§ 167] investigation was the major factor in the compromise which accorded participation in the plan to the class of creditor-stockholders."

11. This Court has emphasized the necessity of a thorough § 167 investigation with a main objective being the "institution of suits for recovery where probable liability has been shown." *Committee for Holders, Etc. v. Kent* (4th Cir. 1944) 143 F.2d 684, 686.

12. These claims were summarized in the statement of counsel as follows:
"There were two insider trading problems, one of which was quickly resolved; a minor one, by payment by the former director to the trustee of forty thousand dollars. There was another one; that's the Norvell White situation which is in litigation pending in New York. There were preferential payments that had been made by Farrington to various creditors prior to the proceeding. Approximately forty thousand dollars was recovered from those people. There was a claimant that had filed a 2.3 million dollar claim against Farrington and one of its subsidiaries. The work of our investigation resulted not only in those claims being withdrawn, but the claimant in fact paying the trustee forty thousand dollars. National Equipment Metal had a 2.9 million dollar contingent liability. Working with the National Equipment people not only resulted in the ability of the trustee to continue to work along with them to where that 2.9 million dollars contingent liability was eliminated in its entirety, and instead the trustee collected a net of about a hundred and sixteen thousand dollars. There were a number of jurisdictions that had tax claims against the trustee. * * * There were various claims that were filed which our investigation showed to be duplicative or erroneous or problematical in some other respect. We eliminated five hundred and thirty-one thousand dollars of those claims. * * *."

13. In one of these suits the trustee sought to recover of a former officer and director profits realized from a sale of his stock under both federal and state law. On motion for summary judgment the action was found maintainable under applicable state law but not under federal law. *Davidge v. White* (S.D.N.Y.1974) 377 F.Supp. 1084. The amount involved in this suit was approximately $1,400,000. The opinion of the District Court does not advert to this decision.

indenture trustee in recovering from the defendants in this suit, irrespective of whether its active participation as a party in that suit may have been precluded by *Caplin,* may have been of benefit to the debtor and its creditors. If the suit as filed by the indenture trustee, on the basis of information shown in the § 167 report, was meritorious, one entire class of security holders, for whom $750,000 was to be set aside from the debtor's assets in escrow awaiting the determination of the suit under the amended plan, may have been eliminated.[14] There was nothing improper, therefore, in counsel for the trustee assisting the indenture trustee by submitting to the latter evidence in support of that suit. In any event, until *Caplin,* the trustee was acting in good faith and after consultation with the SEC, and, as this Court said in a somewhat similar situation, "we think that the services so rendered should be considered in fixing the compensation of counsel for the [trustee]."[14a] Nor, for that matter, was the amount of time devoted by counsel to this suit such as to justify a finding as made by the District Court that "[a] substantial portion of their claimed fees and expenses to date include these services" connected with this New York suit. In its statement of services, counsel allocates a mere 479 hours out of over 14,000 hours of service rendered directly to this litigation. It, of course, may be that some of the depositions taken and which were not considered in the calculation of 479 hours, did touch to some extent on facts that had some bearing on this suit but the time involved directly in developing such evidence must have been minimal.

That its distaste for this New York litigation colored substantially the District Court's attitude to the counsel's fee application is evidenced by the comment in its

opinion that it is possible that counsel, in aiding in the institution of the New York suit, was seeking to benefit its other clients rather than the debtor. We do not feel the record warrants any such inference. The relationship of counsel with one of the debenture holders was, according to the record, fully explored with the Bankruptcy Judge and the SEC, neither of whom found any impropriety in counsel's action. .

 We are convinced that the District Court's allowance in favor of counsel for the trustee for services rendered up to June 30, 1973, was unreasonably low, and that the Court was substantially influenced in this result by its feeling that the finding of insolvency made improper and unnecessary any attempt at reorganization and that counsel's participation in the New York litigation was both unauthorized and improper, intended to prolong the proceedings and to provide an unwarranted justification for counsel fees. As we have seen, these assumptions were not justified and did not warrant a denial of adequate compensation to counsel. We see no reason, though, to remand for further consideration on this phase of the case. The full record is before us and has been reviewed. We are in as good position as the District Court to evaluate counsel's services.[15] Moreover, the SEC has carefully examined counsel's petition in the discharge of its public function and responsibility as mandated by Congress.[16] It has made specific recommendations, based on its examination of counsel's petition and its review of the record, it has supported those recommendations with persuasive reasoning. It has been often declared that the Commission's recommendations in matters of this character "represent the expert opinion of a disinterested agency skilled and experienced in reorganization affairs, * * * 'familiar with * * *

---

**14.** *Cf.,* 406 U.S. at 438, 92 S.Ct. 1678 (Douglas, J., dissenting).

**14a.** *Milbank, Tweed & Hope v. McCue, supra,* 111 F.2d at 102.

**15.** *In Re TMT Trailer Ferry, Inc.* (5th Cir. 1970) 434 F.2d 804, 806, *cert. denied* 409 U.S. 849, 93

S.Ct. 57, 34 L.Ed.2d 91 (1972); *Massachusetts Mutual Life Insurance Co. v. Brock* (5th Cir. 1968) 405 F.2d 429, 435, *cert. denied* 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969).

**16.** 11 U.S.C. § 608.

the amounts of allowances made in scores of comparable proceedings.' \* \* \* are not 'mere casual conjectures,' but are 'recommendations based on closer study than a district judge could originally give to such matters,'" and provide an appropriate antidote to the " 'very undesirable subjectivity [in allowances] with variations according to the particular judge under particular circumstances.' "[17] Accordingly, "[T]he experience and resources of the Commission and its familiarity with this case as an active participant from the beginning are such that its reasoned opinion as to what allowances are fair and reasonable is a very useful and proper guide." *In Re Solar Mfg. Corp.* (3d Cir. 1954) 215 F.2d 555, 562. We conclude, after reviewing the record and giving consideration to the SEC's recommendations that the SEC's recommendation of a fee for counsel for the trustee for services as rendered up to June 30, 1973, is fair and reasonable, and we adopt it as the proper allowance for such counsel.

### (b) *Claim for Services Subsequent to June 30, 1973*

[11] This claim of counsel for the trustee was only filed because of the District Court's specific instruction to do so. When the Court directed the filing of this claim, counsel for the SEC called to its attention that no notice of a hearing on such allowance had been given as specifically required "under Section 247 of the Act."[18] In reply to this objection by the SEC, the Court declared, "I've ordered it. We are not going to go through a lot more hearings." In proceeding to rule on fees subsequent to June 30, 1973, at this hearing, without notice to creditors, the Court erred. The proceeding must be remanded in order that proper notice as required by § 647, 11 U.S.C., may be given creditors of a hearing on the allowance of a fee for counsel for the trustee subsequent to June 30, 1973.[19]

**17.** *Finn v. Childs Co.* (2d Cir. 1950) 181 F.2d 431, 438.

**18.** 11 U.S.C. § 647.

## II

### *Allowance in favor of the Indenture Trustee*

Both the Bankruptcy Judge and the SEC recommended that the Indenture Trustee, New England Merchants National Bank, be reimbursed in full for expenses incurred by it before the bankruptcy proceedings were commenced, payable out of the proceeds available to the Debenture holders. The District Court, however, reduced the allowance as so recommended. It stated no reason for reversing the recommendation of the Bankruptcy Judge, contenting itself with the bald declaration that "[t]he expense item of $12,278.06 is hereby cut 50%." We find no justification for such reduction and remand, with directions that the allowance of full reimbursement for the expenses incurred, to be paid out of the funds available for distribution among debenture holders, be approved.

The SEC recommended that the trustee be allowed $9,000 for services rendered, together with $1,421.59 for expenses incurred, during the bankruptcy proceeding itself, to be paid as a cost of administration out of the general assets of the bankruptcy estate. The Bankruptcy Judge reduced the allowance for services to $7,500, but otherwise adopted the recommendation of the SEC. The District Judge adopted the recommendation of the Bankruptcy Judge, with the exception that payment should be made out of funds available to the debenture holders and not as a cost of administration payable out of the general assets of the bankruptcy estate. The trustee has not appealed the reduction in fee made by the Bankruptcy Judge but has appealed the amendment made by the District Judge in the recommendation of the Bankruptcy Judge as to the source from which payment for these services and expenses are to be made. The Act, in our opinion, makes it clear that the trustee is entitled to receive reasonable compensation for services ren-

**19.** *In Re Cybern Education, Inc.* (7th Cir. 1973) 478 F.2d 1340, 1344; *In Re National Tool & Mfg. Co.* (3d Cir. 1954) 209 F.2d 256, 257.

dered and to be reimbursed for expenses incurred in connection with the administration of the bankruptcy estate, to be paid as an administrative expense of the proceeding.[20]  The District Court accordingly erred in making this fee and reimbursement payable out of the funds available to the debenture holders and, on remand, proper provision for the payment of these funds as an administrative expense of the proceedings should be made.

*REVERSED AND REMANDED WITH DIRECTIONS.*