In re EASTERN MAINE ELECTRIC
COOPERATIVE, INC., Debtor.

Bankruptcy No. 87–20290.

United States Bankruptcy Court,
D. Maine.

Dec. 3, 1990.

William C. Black, Public Advocate.

Joanne B. Steneck, Augusta, Me., for Maine Public Utilities Com'n.

Louis H. Kornreich, Cross, Minsky, Mogul & Singal, Bangor, Me.

John M. Grugan, Ferriter, Scobbo, Sikora, Caruso & Rodophele, Boston, Mass.

Gary L. Blum, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City.

Mark Haley, Conley, Haley & O'Neil, Bath, Me.

Peter B. McGlynn, Rosen, Crosson, McGlynn & Resnek, Boston, Mass.

George W. Kurr, Jr., Logan, Kurr & Hamilton, Bangor, Me.

## MEMORANDUM OF DECISION ON INTERIM APPLICATION OF COUNSEL FOR THE PROJECT NO. 6 PARTICIPANTS COMMITTEE FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AND APPLICATION FOR ALLOWANCE OF COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES OF ELECTRIC UTILITY CONSULTANT

JAMES B. HAINES, Jr., Bankruptcy Judge.

This matter is before the court on the Interim Application of Counsel for the Project No. 6 Participants' Committee for Compensation for Services and Reimbursement of Expenses and on the Application for Allowance of Compensation for Services and Reimbursement of Expenses of the Electric Utility Consultant to the same Committee. The Debtor, Eastern Maine Electric Cooperative, Inc. ("EMEC"), has objected to the applications *in toto*. Having reviewed the application, EMEC's ob-

jection, the submissions of the parties in support of and in opposition to the applications, the record of proceedings in this matter, the record in the adversary proceeding denominated *Massachusetts Municipal Wholesale Electric Company ("MMWEC") v. Eastern Maine Electric Cooperative, Inc.*, Adversary No. 89–1006, and the points and authorities cited by the parties, the court today sets forth the following Memorandum of Decision:[1]

### Background

The detailed background relating to the pending Chapter 11 case as it affects the applications before the court has been set forth elsewhere.[2] Thus, a lengthy explanation of the status of the case is unnecessary. Nevertheless, a recap of certain facts and circumstances is critical to an understanding of today's decision.

EMEC, a rural electric cooperative, filed a petition for relief under Chapter 11 of the Bankruptcy Code on August 31, 1987. EMEC serves an area including portions of Aroostook, Penobscot and Washington counties.

Central to the case, and of by far the most financial significance to EMEC's potential reorganization, are claims arising from EMEC's obligations under what has come to be known as the Project No. 6 Power Sales Agreement ("PSA"), a joint-ownership purchase of capacity of the Public Service Company of New Hampshire's Seabrook Nuclear Power Project ("Seabrook"). MMWEC, using financing mechanisms available to it under Massachusetts law, acquired percentages of ownership in Seabrook's power generation capability and sold entitlement shares of that ownership to a number of electric utilities, among them EMEC. The Project No. 6 PSA provides signatory utilities ("Participants") with shares of 6% of Seabrook's capability.

As part of its reorganization strategy, EMEC, having previously stopped payment to MMWEC under the PSA, moved to re-

---

1. There are no facts in dispute. As a result, this decision is set forth without separately stated findings and conclusions. *Cf.* B.R. 9014 & 7052; F.R.C.P. 52.

2. See this court's memorandum decision addressing intervention issues and the Maine Public Advocate's application seeking formation of a committee to represent EMEC's members.

ject the PSA as an executory contract. On October 25, 1988, the court held that the PSA was a financing vehicle, rather than an executory contract, that rejection of it was therefore unnecessary, and that MMWEC held only a general unsecured claim by reason of EMEC's pre-petition default.

Because EMEC's default under the PSA is claimed to increase the financial burdens of the non-defaulting Participants, the Office of the United States Trustee appointed the Project No. 6 Participants' Committee ("Committee") on February 9, 1988, to give voice to the Participants' collective concerns and to represent them in negotiating a plan of reorganization. The Committee initially was not represented by counsel.

Following the ruling on the contract rejection issues, MMWEC filed an amended proof of claim and, pursuant to the court's recommendation, initiated an adversary proceeding to determine the amount of its claim.[3] The Participants were not joined as parties to that action.[4]

On February 1, 1990, following extensive discovery and numerous proceedings, including a hearing held January 23, 1990, during which the outline of a settlement was read into the record, EMEC filed an application for approval of a compromise between itself and MMWEC. The proposed compromise determined the amount, extent, validity and status of MMWEC's claim and resolved comprehensively disputes between EMEC and MMWEC. Subsequent to the promulgation of notice regarding the application to compromise, a number of Participants filed objections. Ultimately, MMWEC objected as well, asserting that the "meeting of the minds" requisite to a consensual disposition of its

claims had never been achieved. The Committee's chairman was present on February 20, 1990, when the compromise was initially brought on for hearing. The Committee, however, remained without counsel until March 5, 1990, when the court approved retention of George Kurr, Esq., and the firm of Logan, Kurr & Hamilton as its counsel, retroactive to February 26, 1990. Mr. Kurr appeared at later hearings addressing the compromise. In the course of those proceedings, Mr. Kurr and the Committee participated on behalf of the Committee's constituents, seeking to satisfy themselves that the terms of the EMEC/MMWEC compromise did not foreclose the ability of individual members independently to pursue their own claims against EMEC.[5]

In the end, the court approved the compromise, overruling all objections.[6] MMWEC appealed that order. The Committee, through Attorney Kurr, filed its own notice of appeal.[7] Before the U.S. District Court, the Committee has separately briefed the issues. It has argued, *inter alia*, that the bankruptcy court erred in not requiring joinder of the individual Participants in the adversary action. In response, EMEC has asserted that the Committee has no standing to appeal an order compromising an adversary proceeding to which it was not a party, particularly in light of the fact that the final decision and order approving the compromise made it clear that, notwithstanding resolution of issues between MMWEC and EMEC, the rights and claims of individual Participants would rise or fall on their own merits.[8]

In addition to participating in the hearings considering the compromise and in the

**3.** Court Document No. 24, filed January 11, 1989, complaint commencing Adv. No. 89–1006.

**4.** By virtue of the "step-up" provision contained in the PSA, the Participants have asserted that EMEC's default will increase their financial obligations under the contract. In order to protect any potential claims that they may have against EMEC, the Participants have filed separate proofs of claim.

**5.** Transcript of March 1, 1990, hearings before Goodman, J. at page 99.

**6.** Court Document No. 362, Order filed May 11, 1990, approving compromise of Adv. No. 89–1006.

**7.** Court Document No. 368, filed May 21, 1990. The Committee's appeal was, and remains, separately docketed by the District Court.

**8.** Court Document No. 363, Memorandum Decision dated May 10, 1990. (Goodman, J.) at p. 13.

appeal, Attorney Kurr has met with the Committee on numerous occasions to discuss the status of the reorganization and the significance of developments to the Participants' interests. He also has worked with the Committee's utility consultant in analyzing the Debtor's financial affairs and in drafting the Committee's own proposed plan of reorganization, has reviewed and filed objections to disclosure statements filed by EMEC and by MMWEC, and has filed the Committee's disclosure statement and plan. Committee counsel's application includes a request for reimbursement of payments made to an independent contractor/attorney for research and drafting work. Retention of that attorney, Robert W. Laffin, Jr., was approved by order of this court dated October 2, 1990.[9] The accompanying itemization of services discloses that the independent contractor/attorney's work has focused exclusively on the appeal.[10] The application seeks compensation for services performed by attorneys George W. Kurr, Jr., John F. Logan, II, and Harold C. Hamilton, II, at their standard hourly rates of $125.00 per hour. Approval of expenditures by way of payment to the independent contractor/attorney are sought at the rate of $65.00 per hour.[11]

1. *Attorney's Fee Issues.*

■ EMEC has objected on several grounds. EMEC does not assert that the time expended by counsel, or the rates charged by counsel, are unreasonable. The court's independent review of the application confirms that the time entries are reasonable for the tasks performed and that the hourly rates charged are within the range of acceptable hourly rates, given the experience and expertise of the attorneys involved. Thus, although the court is mindful that the application may be approved only to the extent that the compensation sought is reasonable, it is unnecessary here to engage in the detailed lodestar and *Georgia Highway Express* analysis that is undertaken when objections to the reasonableness of compensation are made or when such problems appear in the application. *See Furtado v. Bishop*, 635 F.2d 915 (1st Cir.1980); *King v. Greenblatt*, 560 F.2d 1024 (1st Cir.1977) *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir.1973); *In re Casco Bay Lines, Inc.*, 25 B.R. 747 (1st Cir. BAP 1982).

EMEC challenges the fee application on the ground that a number of the individual Participants are represented collectively in this proceeding by another attorney and, therefore, that representation of the Participants' Committee is duplicative and unfair. EMEC asserts that the Committee's proposed reorganization plan is substantially similar to its own, and that it is based upon EMEC's own plan model with only minor deviations. The principal difference between the two plans, according to EMEC, is valuation of the entity and the resulting amount of the proposed distribution to unsecured claimants, largely to MMWEC and, possibly, to the Participants.[12] EMEC argues that if the Committee and its counsel were "truly interested" in fostering and

---

**9.** The attorney initially conferred with Attorney Kurr on August 21, 1990. His itemized statement accompanying the fee application discloses that he commenced work in earnest on September 18, 1990. In the course of the hearing on the fee applications held November 6, 1990, at the request of the Committee's counsel and without objection, the Court indicated that it would treat its October 2 order as authorizing Mr. Laffin's services *nunc pro tunc* to September 18, 1990.

**10.** An itemization of Attorney Laffin's activities is appended to counsel's fee application under consideration. His work consisted of legal research regarding "joinder issues" and assisting in drafting the Committee's brief on appeal.

**11.** The application also includes a modest amount of paralegal time, billed at $45.00 per hour.

**12.** As noted above, an individual proof of claim has been filed for each Participant. There has, as of yet, been no objection filed to the Participants' claims and, therefore, there has been no ruling regarding their validity, amount, or priority.

enhancing, rather than retarding or interrupting the progress of the reorganization, they would have supported EMEC's plan, reserving the right to raise valuation issues at a later time.

EMEC further argues that if the Committee considered the rulings relating to EMEC's rights and obligations under the PSA critical to the Participants, it should have actively participated in the case in October 1988 when EMEC moved to reject the contract. Moreover, the Committee was quiescent during the entire course of the adversary proceeding relating to MMWEC's claim, from January 24, 1989, when the action was commenced, until hearings considering the compromise were held in early 1990. These factors, coupled with the ultimate disposition of the MMWEC claim, which left alone the rights of the individual Participants to pursue their individually-filed claims, causes EMEC to urge that the portions of the fee application relating to counsel's services rendered in attempting to be heard regarding the compromise, perfecting an appeal from the order confirming the compromise, and researching and briefing that appeal be disallowed.

### 2. Utility Consultant Compensation Issues.

The Debtor's arguments are the same with regard to the Committee's utility consultant's application for compensation and reimbursement of expenses. The consultant, William R. Black, was retained by the Committee pursuant to this court's order dated May 7, 1990. In essence, the Debtor complains that the consultant has assisted the Committee in drafting a plan of its own when, in fact, it should be supporting the Debtor's plan. Mr. Black has played no role in the Committee's opposition to and appeal of the EMEC/MMWEC compromise.

### Discussion

■ The issues before the court require analysis under Code §§ 1103, 1102, 503(b)(2) and 330(a), which collectively envision formation of an active committee of creditors, its retention of counsel and other professionals to assist it, and their compensation as an expense of administration. Citing *In re Vermont Real Estate Invest. Trust*, 26 B.R. 905 (Bankr.D.Vt.1983) and *In re Richton International Corp.*, 15 B.R. 854 (Bankr.S.D.N.Y.1981), EMEC complains that the efforts of the Committee's counsel do not meet the standard requiring that, to be allowed as an administrative expense, such legal services facilitate progress and substantially aid adoption and formulation of a plan of reorganization. EMEC characterizes counsel for the Committee activities as representing the Participants in their individual capacities and argues that his services are not compensable because they are analogous to services rendered to a client in prosecuting its own claim. *In re Vermont Real Estate Invest. Trust, supra*, 26 B.R. at 907.[13]

In *Vermont Real Estate Invest. Trust*, the court analyzed compensability of services undertaken on behalf of a creditor body without prior court approval. In addition, it considered requested payment for services which were not clearly rendered to promote and assist in the reorganization process, but which may have been rendered solely for the benefit of the Committee's individual constituents. As to the latter issue, through analysis assisted by informed estimation, the court allowed one-half of the requested compensation as an administrative expense. 26 B.R. at 909.

*Richton* addressed an application for compensation filed by counsel to an unofficial committee of banks. Thus, the application was considered under Code § 503(b)(4) instead of under §§ 503(b)(2) and 330(a). The court explained that the test it employed was whether the attor-

---

**13.** In its opposition to the fee applications, EMEC not only asks that requested fees be disallowed, it seeks an order requiring the Committee to "show cause why it ought to remain a party in interest in these proceedings." EMEC's Objection to Interim Fee Application of Counsel to the Committee, Court Document No. 511. The Court, while addressing the merits of the application, declines the Debtor's invitation to reexamine the Committee's *raison d'etre* in this context.

ney's services "substantially contributed" to a successful result. It further found that the attorney's self-interest in serving the banks coincided with interests of the debtor in a successful reorganization. The coincidence of interests was not a bar to compensability in light of the applicant's substantial contribution to the reorganization process. 15 B.R. at 856.[14] The *Richton* court acknowledged that representation which served only a client's interests would not be entitled to compensation, and noted that such services had been excluded from the application before it. *Id.*

In reviewing fee applications submitted by creditors' committees' counsel, courts have adhered to the view that only those services which benefit the estate and the administration of the bankruptcy case will be deemed compensable. *See In re Coast Investors, Inc.,* 388 F.2d 622, 625 (9th Cir. 1968).

The services must be "closely beneficial to the estate," but it is no longer the case that compensable services contribute to a plan that is ultimately confirmed. *Cf. In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 567–68 (Bankr.D.Utah 1985) (analyzing request for fees based on pre-petition activities performed on behalf of an informal committee of creditors). The fact that the Committee has taken a position opposing EMEC's proposed plan of organization is, of itself, not grounds for disallowing its counsel's fees and expenses. A duly constituted committee is entitled to "participate fully" in bankruptcy proceedings. Services rendered on its behalf will be compensable if they are ultimately beneficial to the estate. *In re T.M.T. Trailer Ferry, Inc.,* 434 F.2d 804 (5th Cir.1970) *cert. denied,* 402 U.S. 907, 91 S.Ct. 1378, 28 L.Ed.2d 648 (1971) (services rendered in opposition to proposed plan ruled compensable).

Although the Committee has opposed EMEC's plan and has proposed its own plan, which is similar in significant respects, the court cannot fault it for doing so. Nor can it be faulted for taking such steps as were necessary to prepare its own plan and disclosure statement. EMEC's claim that the only difference between the plans is "valuation" understates the case. Valuation in this case is based principally upon projected revenues for the operating utility. The ability to fund a plan is dependent, in not an insubstantial way, on management's appetency to adopt and implement a rate structure for electric service that is economically realistic and permissible under the pertinent statutes and regulations and that will generate funds to make plan payments. It is on those points, rather than upon a straightforward valuation of hard assets, that the plans diverge, with the Committee's plan proposing a substantially higher distribution to unsecured creditors.

The court does not consider the work performed by the Committee's counsel and consultant with regard to plan preparation to be inappropriate or unnecessary. Indeed, such activities appear to be exactly what was anticipated under Code § 1103(c)(3). Moreover, the marginal additional work performed over what would have been done to test the assumptions and to examine the hypotheses underlying competing plans [15] is likely insubstantial in the context of this protracted and complicated proceeding.

■ With regard to the efforts of counsel and the Committee as they relate to the adversary proceeding between MMWEC and EMEC, and the appeal in particular, the court is less convinced that the services rendered were necessary and appropriate to the Committee's functions and duties as set forth in Code § 1103(c).[16] Indeed, when

---

14. See Code § 1103(c)(5), *infra* at n. 13, which expressly contemplates and authorizes committee activities that serve the interests of those whom the committee represents.

15. In addition to the Debtor and the Committee, MMWEC has filed a proposed reorganization plan.

16. The Committee contends that its counsel's activities regarding the MMWEC/EMEC compromise and its appeal are appropriate under Code § 1103(c)(5) which permits it to "perform such other services as are in the interest of those represented."

one goes beyond counsel's efforts to understand the compromise and to safeguard the Participants' collective interests, it appears possible, if not likely, that the efforts of the Committee have retarded, rather than enhanced, efforts to reorganize. EMEC correctly observes that, in most instances, a Committee representing a body of creditors would likely support a beneficial compromise of a single, substantial claim. In addition, because the disposition of the MMWEC claim under the compromise expressly leaves untouched the rights of the individual Participants, the court is at a loss to comprehend the perceived necessity of the Committee's efforts in challenging the compromise and appealing the order authorizing it.

Nevertheless, the Committee's appeal is pending before the District Court. Among the issues presented on appeal, EMEC challenges the Committee's standing, as well as the merits of its arguments. Accordingly, it would not be appropriate to rule now on the compensability of Committee counsel's actions with regard to the compromise and appeal. Rather, disposition of that portion of the fee application that relates to the Committee's opposition to the compromise and to its appeal should await the District Court's decision, because that decision may provide useful guidance in that regard.

## CONCLUSIONS

### 1. *Attorneys' Fees.*

■ For the reasons set forth above, this court approves the Interim Application of Counsel for Project No. 6 Participants' Committee for Compensation and Reimbursement of Expenses to the extent that the application comprehends work performed in general participation in the bankruptcy proceedings, including conferring with counsel and the parties, reporting to the Committee members, opposing and supporting proposed actions in the proceedings, reviewing and opposing disclosure statements filed by other parties, and drafting and filing the Committee's own proposed plan and disclosure statement. A review of the application indicates that the sum total of $40,960.50 is allocable for appropriate services rendered in that regard and such compensation (323.40 attorney hrs. @ $125.00/hr., and 11.9 non-attorney hrs. @ $45.00/hr.) is therefore allowed. As to compensation sought for services rendered in connection with the appeal, and, to a limited extent, in connection with proceedings addressing the EMEC/MMWEC settlement (a total of 33.10 hrs. @ $125.00/hr. or $4,137.50), the application is denied without prejudice, with instructions to counsel to re-apply after disposition of the Committee's appeal.[17]

### 2. *Attorneys' Expenses.*

■ Reimbursement for expenses, in the sum of $2,467.50, representing the amounts paid to the independent contractor attorney whose research and drafting related solely to issues springing from the compromise and appeal, should not be allowed at this time. As was the case with appeal-related attorneys' fees, the application should be resubmitted when the appeal has been decided. Mr. Laffin's .5 hour entry for August 21, 1990, represents time he spent in an initial interview which took

17. The Court concludes that it was necessary and proper for the Committee's counsel to inform himself and the Committee about the substance of the EMEC/MMWEC settlement and to ensure that the Participants' rights and claims were not prejudiced by it. It was also proper for counsel to discuss and pursue with attorneys for EMEC and MMWEC the prospects for a global settlement that would enable the parties to make progress towards submitting a consensual plan. However, his efforts appear to have gone well beyond that point. At this time, compensation for the following time entries as shown in Exhibit A to the application is disallowed. The amount of time disallowed follows each date in parentheses (all dates in 1990): 5/14 (1.25 hrs.); 5/15 (1.3 hrs.); 5/16 (.3 hrs.); 5/17 (.8 hrs.); 5/18 (2.0 hrs.); 5/21 (6.0 hrs.); 5/24 (1.8 hrs.); 5/25 (1.0 hrs.); 5/29 (.3 hrs.); 6/11 (.2 hrs.); 6/18 (2.0 hrs.); 6/19 (2.8 hrs.); 6/20 (.7 hrs.); 6/21 (.3 hrs.); 6/26 (.2 hrs.); 6/28 (.2 hrs.); 7/02 (.3 hrs.); 7/05 (2.0 hrs.); 7/09 (.25 hrs.); 7/17 (.4 hrs.); 7/18 (2.0 hrs.); 7/19 (2.0 hrs.); 7/23 (.5 hrs.); 8/20 (3.0 hrs.); 8/21 (1.5 hrs.). Although the application is very specifically itemized, precise amounts of time attributable to certain tasks has been estimated where compensable and non-compensable services are mixed.

place before the effective date of the order approving his retention. To that extent, expenses relating to his retention are disallowed with prejudice.

For the balance of expenses claimed, there is no clear indication of the purposes for which they were incurred. The applicant is directed to submit a more detailed statement indicating which expenses were incurred in objecting to the compromise and in prosecuting the appeal, as opposed to rendering other services. Those expenses relating to general services will be allowed; those relating to the appeal will be disallowed without prejudice.

### 3. *Consultants' Fees and Expenses.*

The application seeking compensation of $11,568.75 and reimbursement of expenses in the amount of $2,886.94 for Mr. Black, the Committee's consultant, is allowed in full.